Leon B. Polsky, J.
This case brings into question the validity of CPL 720.10 (subd. 2, par. [a]), a provision which precludes the availability of youthful offender treatment to otherwise eligible youths who have been indicted for class A felonies.
Although counsel have raised several broad-gauged issues relating to the constitutionality of the restriction, both facially and in its application, I will deal only with the narrow issue of whether it is constitutionally permissible to use the grade of offense charged in the accusatory instrument — as opposed to the grade of offense for which the defendant is actually convicted — as the basis for determining the availability of youthful offender treatment.
As a preliminary matter, inquiry must first be directed to the meaning of the challenged section with a view to finding any reasonable construction or interpretation of the statutory language which would avoid the constitutional challenge.
CPL 720.10 (subd. 1) defines “Youth” as a person between the ages of 16 and 19 at the time of the alleged commission of the crime. CPL 720.10 (subd. 2) defines “ Eligible youth ” as a youth who is eligible to be found a youthful offender and “ Every youth is so eligible unless he (a) is indicted for a class A felony, or (b) has previously been convicted of a felony.” It is clear that CPL 720.10 (subd. 2, par. [a]) means what it says and says what it means. The word “ indicted ” is a term of art, defined in CPL 1.20 (subd. 3) and CPL 200.10. There is no way that the court can construe the word “ indicted ” to mean “ convicted ” without doing violence to the unequivocal and unambiguous expression of the Legislature. Where the Legislature wanted the “ conviction ” to control the availability of special treatment for young persons it said so. See section 75.00 (subd. 3, par. [a]) of the Penal Law, which precludes the availability of “ Young Adult ” treatment “ where the conviction is of a class A felony.”*
The question raised persists: May the Legislature refuse to permit youthful offender treatment to an otherwise eligible youth merely because he had been accused by indictment of a *618 class A felony — without regard to the grade of offense of which the youth is ultimately found guilty?
An understanding of the function of an indictment in the prosecution of a criminal case is critical to the disposition of this case.
Under New York law, an indictment is a written accusation by the Grand Jury charging the defendant with at least one felony and serves as the jurisdictional basis for a prosecution in a superior court (CPL 1.20, subd. 3; 200.10; 210.05). Its common-law and constitutional function is to identify the charge so that the defendant may have notice of the nature and character of the offense in order to prepare his defense, and, it also serves to identify the offense for double jeopardy purposes. (People v. Bogandoff, 254 N. Y. 16; People v. Farson, 244 N. Y. 413; 4 Blackstone’s Comm., p. 302.)
Under the challenged section, the indictment does the additional service of restricting the availability of youthful offender treatment. Unquestionably an indictment — or any accusatory instrument — can give rise to ancillary consequences beyond the formal notification and delineation of the charges. Also, the grade of offense charged may affect the ancillary consequences. Thus for example, a jury trial may be available for a higher grade of offense but not for a lower offense (Duncan v. Louisiana, 391 U. S. 145, rehearing den. 392 U. S. 947); a greater number of peremptory challenges may be allowed for the higher grade (CPL 270.25, subd. 2); more time may be allowed the prosecution to move the case for trial in cases involving a more serious accusation (CPL 30.30, subd. 3, par. [a]), etc.
In all such instances, however, the effect of the differences in treatment between different grades of offenses charged terminates before or at the time of the adjudication of guilt. Apart from the challenged provision, there is no instance in New York law where the charges contained in the accusatory instrument survive independently after their adjudication.
Another facet of New York law relating to indictments is of special significance to the issues presented here. Every count of an indictment includes every lesser included offense (CPL 1.20, subd. 3) and if after trial there is a reasonable view of the evidence which would permit the jury to find the defendant committed the lesser offense but not the greater, then the court must submit the lesser offense to the jury even though not specificially charged in the indictment (CPL 300.30, subd. 1; 300.50, subd. 2; see, also, People v. Malave, 21 N Y 2d 26; People v. Mussenden, 308 N. Y. 558). The inclusion of lesser included offenses *619 within a -count' of an indictment charging a higher grade of offense is highlighted by the statutory provisions dealing with motions to dismiss the indictment for insufficiency of evidence before the Grand Jury. Under CPL 210.20 (subd. 1, par. [b]) - and CPL 210.30, a motion to dismiss because of the legal insufficiency of the evidence before the Grand Jury would have to be denied if there were legally sufficient evidence to sustain a lesser included offense even though the evidence might be insufficient to sustain the actual offense charged. Thus it is possible, even at the pretrial stage, for a defendant to be held to answer on an “ A ” felony charge where the only evidence establishes the basis for some lesser grade of offense.
The challenge to the restriction on availability of youthful offender treatment is grounded upon the due process and equal protection clauses of the New York and United States Constitutions.
Under the due process challenge, ¡the restriction must fall because it gives conclusive weight to ¡the untested allegations of the indictment. By tying the availability of youthful offender treatment to the indictment, without regard to whether the class A felony charge is sustained by a verdict is to give constitutionally impermissible significance to the ex parte Grand Jury accusation. Although an indictment and the grade of offense charged can give rise to ancillary consequences, some of which are described above, the added burdens imposed by the untested accusation must be most circumscribed and related to the purpose and function of the accusatory instrument. In no event, however, may the indictment survive or exist independently after an adjudication of the charges contained therein. Such independent existence is particularly offensive to notions of due process when it is recalled that a refusal to grant a motion to dismiss the class A felony charge might be justified only because the evidence before the Grand Jury was sufficient to sustain some lesser included offense not of A felony grade. Ultimately, of course, the penalties prescribed for particular offenses must depend upon the crime of which the defendant is convicted, not the offense with which he was originally charged.
The restriction contained in CPL 720.10 (subd. 2, par. [a]) also cannot prevail against the challenge under the equal protection clause since it irrationally discriminates against those youths who had been charged with class A felonies but who would be ultimately convicted of lesser felonies. There is, and can be no rational basis for treating differently youths who have been convicted of the same offense merely because one of them *620 had originally been charged with a higher grade of offense. The restriction or classification based upon the charge made in the indictment rather than the charge proven in court is utterly capricious and irrational. It is therefore invalid under the equal protection clauses of both the State and Federal Constitutions. (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11; see Baxstrom v. Herold, 383 U. S. 107.)
I have examined the report of the pre-pleading investigation prepared by the Probation Department, the conclusion of which reads as follows: “ Despite the seriousness of his instant situation, he [the defendant] manifests positives in the area of employment, interpersonal relationships and familial concern. With the proper guidance, there appears to be a fairly good potential for positive adjustment.”
I am in agreement with the report’s conclusion and upon the guilty plea to the indictment by this 17-year-old defendant, direct that the conviction be vacated and a youthful offender adjudication be substituted.

 It is also of significance that a number of attempts were made to amend the statute, substituting the word “ conviction ” for “ indicted.” See, e.g., Sen. 1194/1973; Assembly 1823/1973; Sen. 1563/1972. All of these bills were defeated in the Legislature.