Leonard Leigh Finz, J.
The defendant, aged 16 at the time of the crime, who has pleaded guilty to criminal sale of a controlled substance as a class A-III felony, now moves this court for the granting of youthful offender treatment. To determine this question, it is necessary to examine the present controlling statutes addressed to the subject.
The present CPL article 720 states that only an "eligible *306 youth” (CPL 720.10 subd. 2) may receive a "youthful offender” sentence (CPL 720.10, subd. 4). An "eligible youth” means a defendant who is eligible to be a youthful offender who was between the ages of 16 and 19 when the crime was committed. Every youth is so eligible unless he is (a) indicted for a class A felony, or (b) has previously been convicted of a felony. It is clear that a class A felony includes a class A-I, -II and -III felony (Penal Law, § 70.00, subd. 3).
It is equally clear that the strict application of CPL 720.10 would preclude the granting of youthful offender treatment in this instance. The difficult issue confronting this court, however, is whether CPL 720.10 (subd. 2) violates the due process and equal protection clauses of the Federal and State Constitutions in that it denies to an otherwise eligible youth the privilege of youthful offender status if he has been indicted for a class A-III felony.
In the instant case, the defendant was indicted on one count of criminal sale of a controlled substance in that ,he was charged with having sold a minimal quantity of cocaine to an undercover agent for which the defendant netted a $15 profit. He has had no prior involvements with the law. The sale, which the defendant admits, constitutes a class A-III felony under existing law. It would appear, therefore, that the defendant youth, having been indicted for a class A felony, is ineligible to receive youthful offender treatment in the face of CPL 720.10.
A brief revisit of the public climate surrounding the evolution of the 1973 narcotics laws demonstrates clearly a strong desire to attack a problem that was endangering the social stability of all citizens throughout the State.
This new narcotics law which looms over the defendant had its genesis in the fact that the communities of this State, indeed of the entire nation, were being inundated by narcotics and other harmful drugs. It appeared that sellers, pushers and dealers were operating almost at will, infecting the youth of this country with the dreadful effects of these poisonous drugs, causing addiction, death and degradation, and spreading crime and misery throughout the land.
In 1973, it appearing that Draconian measures would be necessary to prevent this catastrophe from overwhelming society, the Governor of the State of New York in his message to the Legislature stated, in effect, that despite the expenditure of over a billion dollars "We have achieved very little *307 permanent rehabilitation — and have found no cure* * * Addiction has kept on growing * * * We face the risk of undermining our will as a people — and the ultimate destruction of our society as a whole. This has to stop.” (McKinney’s Session Laws of NY, 1973, Messages of the Governor, p 2318.) After thus recognizing the apparent failure of all previous programs, the Governor then went on to propose a series of laws so severe as to deter even the most hardened and professional criminals from trafficking in drugs: "(1) Life Prison Sentences for All Pushers * * * (2) Life Sentence for Violent Crimes by Addicts * * * (3) Removal of Youthful Offender Protections.”
The Legislature, despite the warnings of some that these laws would work injustice in many cases, or even be self-defeating, dutifully passed this highly repressive legislation and thus effectively denied the court any real discretion except with regard to the length of the jail sentence, but jail, with a minimum of at least one year and a maximum of life, they ruled there must be. Having eliminated, by making the sale or possession of all controlled substances class A felonies, any consideration of youthful offender treatment and having abolished the reformatories, the law, as passed by the Legislature, destroyed the option which might have provided some possibility for rehabilitation for young people who, perhaps because of their very youth, would be unable to comprehend the gravity of their transgression. It was thus, perhaps through overreaction on the part of the Governor and the Legislature, that all narcotic offenders were thrust into this Procrustean bed, the old and the young, the large and the small.
We return again to the applicable provisions of the youthful offender statute.
CPL 720.10 provides for youthful offender treatment for all persons between the ages of 16 and 19 "charged with a crime” (subd. 1). "Every youth is so eligible unless he (a) is indicted for a class A felony, or (b) has previously been convicted of a felony” (subd. 2). The Practice Commentary by Richard G. Denzer in McKinney’s Consolidated Laws of New York (Book 11 A, CPL art 720, p 314) offers a review of the procedure previously employed (Code Grim Pro) in behalf of youthful offenders, indicating that "youthful offender process could take root as soon as the basic accusatory instrument was filed”. The commentary then describes the various steps taken procedurally under the code to effectuate youthful offender *308 treatment. The significance of this is that all the procedures inaugurated in such case occurred in the indictment or preconviction posture.
Denzer’s commentary then skips over the original version of the youthful offender article (art 720) as it appeared in the 1970 version of the CPL as being not materially different from that contained in the code and therefore did not require discussion since it: "never becoming operative, yielded to the 1971 revision which drastically restructured the entire process.
"The salient feature of the final or 1971 version is a conceptual innovation which transfers the determination to grant or refuse youthful offender treatment from a point near the commencement of the criminal action and before entry of a plea, to a point virtually at the end of the action, namely, after conviction for the crime and immediately before sentence (§ 720.20). No step in the youthful offender process is taken until conviction (either by verdict or plea). The court then orders a pre-sentence investigation (id., subd. 1), which, generally speaking, is part of the criminal process in any event. On a subsequent date, immediately prior to pronouncing sentence, the court declares its finding upon the youthful offender issue” (p 316; emphasis added).
When the Legislature passed the provisions of the new narcotics laws, no change was made in the youthful offender statutes, although a number of attempts were made to amend the statute (CPL 720.10) by substituting the word "convicted” for "indicted”. All such attempts were defeated in the Legislature. (See People v Brian R., 78 Misc 2d 616.)
The history of the youthful offender law indicates that that statute was not originally intended to deal with drug-related crimes and is now inflexible in connection with what might be considered a minor crime. The prior law (Code Crim Pro, § 913-e) permitted the court to extend youthful offender treatment to all youths who had not committed a crime which was "not punishable by death or life imprisonment”. Manifestly, the old law denied the benefits of youthful offender treatment only to those who had committed the most serious crimes (class A felony). Today’s law (eff Sept 1, 1971) carries this "A” felony scheme into the present statute. It is obvious that our present law never anticipated that a score of class A felonies would be enacted dealing with drugs and that many of these drug crimes would be relatively minor in nature. The constitu *309 tional issue upon which this determination rests was addressed in People v Brian R. (supra).
In Brian R. (supra) a New York County, First Department case, the facts were very similar to the ones posed here. There, the learned court perceived the contradiction created by the fact that the ultimate sentence in a narcotics case where the perpetrator was one who would otherwise be a youthful offender, was controlled not by the ultimate conviction but by the accusation rendered in the indictment. Stated conversely, as the court did in that case, the defendant was immediately deprived of youthful offender treatment upon indictment, even though he might later be convicted of a lesser included crime. The court found this procedure to be violative of the Constitutions, both of the State of New York and of the United States, as depriving the defendant of his right to due process and the equal protection of the law.
"Under the due process challenge, the restriction must fall because it gives conclusive weight to the untested allegations of the indictment. By tying the availability of youthful offender treatment to the indictment, without regard to whether the class A felony charge is sustained by a verdict is to give constitutionally impermissible signiñcance to the ex parte Grand Jury accusation. Although an indictment and the grade of offense charged can give rise to ancillary consequences, some of which are described above, the added burdens imposed by the untested accusation must be most circumscribed and related to the purpose and function of the accusatory instrument. In no event, however, may the indictment survive or exist independently after an adjudication of the charges contained therein. Such independent existence is particularly offensive to notions of due process when it is recalled that a refusal to grant a motion to dismiss the class A felony charge might be justified only because the evidence before the Grand Jury was sufficient to sustain some lesser included offense not of A felony grade. Ultimately, of course, the penalties prescribed for particular offenses must depend upon the crime of which the defendant is convicted, not the offense with which he was originally charged.
"The restriction contained in CPL 720.10 (subd. 2, par [a]) also cannot prevail against the challenge under the equal protection clause since it irrationally discriminates against those youths who had been charged with class A felonies but who would be ultimately convicted of lesser felonies. There is, *310 and can be no rational basis for treating differently youths who have been convicted of the same offense merely because one of them had originally been charged with a higher grade of offense. The restriction or classification based upon the charge made in the indictment rather than the charge proven in court is utterly capricious and irrational. It is therefore invalid under the equal protection clauses of both the State and Federal Constitutions. (US Const 14th Arndt; NY Const, art I, § 11; See Baxtrom v Herold, 383 US 107.)” (People v Brian R., supra, pp 619-620; emphasis supplied).
In People v Estrada (80 Mise 2d 608), a Kings County, Second Department case, a similar issue was presented. There, the defendant, in seeking youthful offender treatment, advanced the arguments embraced in Brian R., namely, that the youthful offender statute (CPL 720.10, subd. 2) is unconstitutional, in that it denied the defendant due process and the equal protection of the law. The learned court there declined to follow the decision in Brian R, citing among other, things, the Federal Juvenile Delinquency Act (US Code, tit 18, § 5032; 62 US Stat 857):
"A juvenile alleged to have committed one or more acts in violation of a law of the United States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise.
"In such event the juvenile shall be proceeded against by information and no criminal prosecution shall be instituted for the alleged violation.”
This, the court stated, was supportive of the theory that distinctions could be made among classes of criminals and that the New York statute was therefore constitutional. This was in accord with United States v Quinones (353 F Supp 1325, 1328), which was decided under the then existing statute: "The equal protection clause of the Federal Constitution does not prohibit legislative classification, as long as such a classification is reasonable, and not arbitrary, and based upon a difference having a fair and substantial relation to the object of the legislation. Hayes v United States, 112 F 2d 417 (10 Cir, 1940). One who attacks such a classification must show it to be arbitrary, Hayes, supra, p 421. (See also: 16A CJS Constitutional Law § 563, p 519, et seq.)”
*311 Thus there was created a dichotomy with respect to the approach to the laws involving youthful offenders in two neighboring jurisdictions and presented the dilemma to the disciples of stare decisis. Two important events have recently occurred, however, which would seem to indicate the direction in which this court should proceed.
Firstly, the decision in People v Brian R. (supra) has been affirmed by the Appellate Division, First Department, unanimously and without opinion (47 AD2d 599).
Secondly, the previously existing Federal law with regard to juvenile delinquency (juvenile delinquent being similar to youthful offender in New York), cited and discussed at length in support of the decision in People v Estrada (supra), was replaced by the Juvenile Justice and Delinquency Prevention Act of 1974 (US Code, tit 18, ch 403, eff Sept 7, 1974) so that section 5031 of the United States Code now reads as follows: "For the purposes of this chapter, a 'juvenile’ is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday, and 'juvenile delinquency’ is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult.” It can therefore be noted that eliminated from the Federal statute is any classification that would forbid the availability of "juvenile” or youthful treatment. It is significant that "juvenile” treatment can be afforded to any youth who qualifies solely by age, the nature of the crime or felony notwithstanding.
Section 5032 of the United States Code then goes on to describe the procedure to be followed in according such treatment to a juvenile delinquent. Under its provisions, such a person "shall not be proceeded against in any court of the United States” unless the State in which the crime was committed does not have jurisdiction or refuses to assume jurisdiction with regard to such act, or does not have available programs and services adequate for the needs of the juveniles. In the event that the District Court proceeds, "no criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided below.” This provision then provides that the juvenile shall have: "requested in writing upon advice of counsel to be proceeded against as an adult, *312 except that, with respect to a juvenile sixteen years and older alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony punishable by a maximum penalty of ten years imprisonment or more, life imprisonment, or death, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice.” (Emphasis supplied.) The intention of the law that all such proceedings shall take place before conviction is reinforced by the provision in the same section barring juvenile delinquency treatment once the juvenile has entered a plea of guilty, or the proceeding has reached the stage that evidence has begun to be taken with respect to the act which has been charged.
It is of interest to read the testimony given by the president of the National Association of State Juvenile Delinquency Program Administrators before a United States Senate Subcommittee on February 22, 1973, which antedated the passage of the Juvenile Justice and Delinquency Prevention Act of 1974 (eff Sept 7, 1974), which in part states: "Our objective must be, therefore, to minimize the youngster’s penetration into all negative labeling, institutional processes. To this end, we must exploit all of the available alternatives at each decision point, i.e., suspension, expulsion, arrest, detention, court wardship, commitments, parole revocation.” (US Code Cong Admin News, 1974, vol 10 p 4240.) It is also noteworthy that the committee’s report concluded (p 4270) "that this nation has reached a turning point in the way we handle children in trouble. It is imperative that this nation devote its resources and talents to resolving the legal and social issues involved in the prevention and control of delinquency.”
The new Federal Delinquency Statutes, effective September 7, 1974, represent a far more humanistic approach to the problem of youthful offenders and may very well serve as a model for the Legislature of any State. The succeeding statutes, sections 5033, 5034, 5035 et seq of the United States Code, set forth in detail the steps to be taken with regard to juveniles. From the time that such youth is taken into custody and advised of his rights, it will be quite clear that the objective of the law is to protect the young offender in every way possible from further contamination by association with *313 criminals by the delicacy and dispatch with which such matters must be handled.
Returning to the first event cited above, namely, the affirmance in the Appellate Division, First Department, of People v Brian R. (47 AD2d 599, supra) , it is quite evident that an anomaly has been created in that there appears to be a divergence of the law with regard to the treatment of youthful offenders which, in itself, would create a constitutional problem, in that, to deny youthful offender treatment to a youth who is alleged to have committed the crime charged herein because he is in a court in the Second Department, would be to deny him the equal protection of the law which the Constitution requires. To say that one who has committed an A-III felony within the boundaries of Manhattan and The Bronx may be entitled to youthful offender treatment, but that one who has committed the same offense at the other end of the bridges connecting these counties must be denied such treatment, would certainly create a bewildering constitutional problem.
Buttressed by logic, motivated by justice and persuaded by appellate authority, this court can reach but one conclusion— that is, to remove the constitutional infirmity of CPL 720.10 that would deny to this defendant the opportunity to have him considered a youthful offender. Freed from this burden by unconstitutionality, this court can now proceed to examine the issue of whether this youth is deserving of the privilege of youthful offender status.
An examination of the presentence reports discloses that the defendant is a high school senior, the eldest of eight children, of what the probation investigator describes as a decent, moral, hard working immigrant family. He has no prior record and úntil this involvement has been a model student, son and brother. The probation report graphically states: "This is the defendant’s ñrst offense. The defendant, a mere youth, showed a poor judgment by falling in with some bad associates. It appears he did not have any base motives in selling drugs. Another factor in the offense was the defendant’s desire to gain approval and acceptance as a minority person in a new country. The behavior was thoughtless rather than deliberate.”(Emphasis supplied.)
A report from the co-ordinator of the Correction Rehabilitation Career Development Program states that the defendant is seeking a high school diploma while incarcerated and that *314 "We have found that [he] is a conscientious person with potential to continue his education.”
Under all of the circumstances, therefore, it would appear that the interests of justice would best be served by a granting of youthful offender treatment. Accordingly, the conviction is vacated and a youthful offender adjudication is substituted in its stead.