THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS SANTIAGO, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NORMA JEAN DRUMMOND, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LUIS JIMENESS, Respondent.

Second Department, December 31, 1975

*Samuel Boxer* for Carlos Santiago, appellant.

*Carl Vergari, District Attorney (B. Anthony Morosco* of counsel), for respondent.

*John F. Middlemiss, Jr. (Anna M. Perry* and *Leon J. Kesner* of counsel), for Norma Jean Drummond, appellant.

*Henry F. O'Brien, District Attorney (Ronald E. Lipetz* of counsel), for respondent.

*Eugene Gold, District Attorney (Laurie Stein Hershey* and *Robert Dublirer* of counsel), for appellant.

*William E. Hellerstein* and *William J. Gallagher (Steven Lloyd Barrett* of counsel), for Luis Jimeness, respondent.

HOPKINS, J. We treat these three appeals together because the sole issue in each is whether CPL 720.10 (subd 2) is unconstitutional. The challenged statute provides that a person between the ages of 16 and 19 is eligible for youthful offender treatment "unless he (a) is indicted for a class A felony, or (b) has previously been convicted of a felony" (CPL 720.10, subd 2). We hold that the statute is constitutional.

As the factual pattern in each appeal differs, we state the circumstances in each separately.

### THE DEFENDANT SANTIAGO

Santiago was indicted in January or February, 1974 for the crimes of criminal sale of a controlled substance (cocaine) in the third degree, criminal possession of a controlled substance (cocaine) in the third degree, criminal sale of a controlled substance (marijuana) in the fifth degree and criminal possession of a controlled substance (marijuana) in the sixth degree; in addition, in March, 1974 he was indicted for the crime of criminal possession of a controlled substance (marijuana) in the sixth degree.

During his trial Santiago pleaded guilty to the crime of criminal possession of a controlled substance in the third degree in satisfaction of all counts of both indictments. At that time Santiago was advised of the consequences of his plea and that the mandatory minimum sentence was one year to life. A month later, and before sentencing, his counsel moved to vacate the conviction and to substitute a youthful offender adjudication on the ground that the statute forbidding the application of youthful offender treatment to persons indicted for class A felonies was unconstitutional.[1] In reply the prosecution claimed, among other things, that Santiago could not challenge the statute since he had entered a plea of guilty. The motion was denied and Santiago received a sentence of one year to life.

On this appeal Santiago contends that the statute is uncon-

---

1. The statute (CPL 720.10, subd 2), so far as pertinent, provides: "every youth is so eligible unless he (a) is indicted for a class A felony, or (b) has previously been convicted of a felony." A "youth" is a person at least 16 years of age and less than 19 years of age (CPL 720.10, subd 1).

stitutional and that he must be resentenced as a youthful offender.

### THE DEFENDANT DRUMMOND

Drummond was indicted for the crime of murder. She pleaded guilty to the crime of manslaughter in the first degree (a class B felony). No application was made by her that she be afforded youthful offender treatment. She received an indeterminate term of imprisonment with a maximum term of 12 years. On appeal she contends, *inter alia,* that the statute is unconstitutional.

### THE DEFENDANT JIMENESS

Jimeness was indicted for criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. After a jury trial he was convicted of the crime of criminal sale of a controlled substance in the third degree.

At sentencing his counsel requested that Jimeness be granted youthful offender treatment. That application was opposed by the prosecution, but the trial court granted the relief. Jimeness was then sentenced to five years' probation on condition that he undergo inpatient treatment at the Drug Abuse Control Commission for a period not in excess of one year. The People appeal, claiming that the sentence imposed was illegal as the relevant statutes require imprisonment (Penal Law, § 60.05, subd 1; § 70.00).

### THE STATUTE

The predecessor to CPL article 720 (Code Crim Pro, tit VII-B, §§ 913-e–913-r) was enacted in 1944 (L 1944, ch 632). Section 913-e read substantially as CPL 720.10 (subd 2) now reads.[2] Under the provisions of the Code of Criminal Procedure, a four-step process was established to determine whether a youth should be granted youthful offender treatment: (a) the grand jury or the District Attorney recommended, or the court, on its own motion, determined, that an investigation of the youth be made; (b) the court approved the recommenda-

---

2. Section 913-e, in part, provided, "and the term 'youthful offender' shall mean a youth who has committed a crime not punishable by death or life imprisonment, who has not previously been convicted of a felony".

tion and directed the investigation to be made (upon consent of the defendant); (c) the investigation was made; and (d) the court, on the return of the results of the investigation, either granted or denied youthful offender treatment (see Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL art 720, pp 314–315). If the court granted youthful offender treatment, the indictment was sealed and replaced by a youthful offender information; a private trial was then held on the information; an adjudication of guilt did not operate as a criminal conviction (Code Crim Pro, § 913-n).

The original version of the CPL (L 1970, ch 996) did not change the basic structure of title VII-B. However, because that structure was considered "extremely cumbersome", the present article 720 was substituted (Denzer, Practice Commentary, *supra,* p 315). The most prominent alteration was that the process of investigation and determination of youthful offender treatment was transferred from a point before the adjudication of guilt to a point after that adjudication (L 1971, ch 981; Denzer, Practice Commentaries, *supra,* p 316). "The new scheme", states Professor (now Judge) Denzer, "possesses practically all the virtue of the former ones while concomitantly shedding their burdensome, wasteful investigation requirements and other destructively cumbersome features" (Denzer, Practice Commentary, *supra,* p 317). In both schemes, however, the eligibility standard remained the same and the purpose underlying both procedures was identical—to avoid the stigma attaching to a conviction for youths treated as youthful offenders (see *People v Shannon,* 1 AD2d 226, 231, affd 2 NY2d 792).

### PRIOR DECISIONAL LAW

The issue of the constitutionality of the Youthful Offender Procedure (CPL, art 720) has been raised previously in several cases, but without uniform conclusions. In *People v Brian R.* (78 Misc 2d 616), Judge POLSKY found CPL 720.10 (subd 2) unconstitutional because it violated both due process and equal protection of the laws. Thus, he said (p 619) that the statute deprived youths of due process "because it gives conclusive weight to the untested allegations of the indictment", and of equal protection "since it irrationally discriminates against those youths who had been charged with class A felonies but who would be ultimately convicted of lesser felonies." The Appellate Division, First Department, affirmed

without opinion *(People v Brian R.,* 47 AD2d 599). No appeal from that decision has been perfected by the People. In the First Department, therefore, the state of the law is that the statute is unconstitutional.

In *People v Goodwin* (49 AD2d 53), the Appellate Division, Third Department, by a split decision, held the statute constitutional. The majority (per MAIN, J.) found no denial of due process or equal protection; Mr. Justice GREENBLOTT, dissenting, was of the view that the statute offended equal protection for the reason stated by Judge POLSKY. Apparently, no appeal is pending from that decision.[3] In the Third Department, therefore, the state of the law is that the statute is constitutional.

Other reported decisions reaching varying results as to the constitutionality of the statute have not been considered by the appellate courts.[4] Unquestionably, the effect of the stringent narcotics laws has induced the assault upon the constitutionality of the statute (see *People v McNair,* 46 AD2d 476, 479). It is, after all, the classification of crimes by the Legislature which is the operative factor in the determination of eligibility, and the enactment of legislation denominating certain violations of the narcotics laws as class A-I, A-II and A-III felonies (L 1973, chs 276–278) prevents youths charged with these crimes from being treated as youthful offenders. The statute has since been amended to remove the prohibition of eligibility to youths indicted for class A-III felonies, thus avoiding the wholesale denial of consideration for youthful offender treatment to youths indicted for crimes arising out of violations of the narcotics laws (CPL 720.10, subd 2, as amd by L 1975, ch 832, eff Aug. 9, 1975).

Nevertheless, the issue remains open for the present defendants and those similarly situated, as well as for youths who may be indicted in the future for class A-I or class A-II felonies. Moreover, in view of the conflict which exists in the decisions, it is highly important that an authoritative ruling

---

3. We are informed that an application by the defendant for leave to appeal to the Court of Appeals was denied.

4. In *People v Charles S.* (79 Misc 2d 1058) Judge POLSKY held that the defendant did not lack standing to contest the statute, even though he had been convicted of a class A felony. In *People v Ruben S.* (81 Misc 2d 305) Mr. Justice FINZ determined that the statute was unconstitutional, citing *People v Brian R. (supra)* with approval.

Mr. Justice MARANO, in *People v Estrada* (80 Misc 2d 608), came to a contrary conclusion and held the statute constitutional.

be made on the issue. We invite, therefore, an application for leave to appeal to the Court of Appeals from the determinations reached here so that such a ruling can be made.

### THE CLAIMS OF THE PARTIES

As we see it, the constitutionality of the statute has several aspects: (1) whether, as the defendants contend, it breaches due process; (2) whether, as the defendants contend, it breaches the equal protection of the laws; and (3) whether, as the People contend in the cases of Santiago and Drummond, a defendant who pleads guilty to a lesser crime than the crime for which he was indicted may challenge the constitutionality of the statute. We address the last contention first.

### THE EFFECT OF A PLEA OF GUILTY

A plea of guilty waives all nonjurisdictional defects *(People v La Ruffa,* 34 NY2d 242, 245; *People v Schiskey,* 39 AD2d 608), among which are the unconstitutional composition of the grand jury *(Tollett v Henderson,* 411 US 258) and the constitutional rights of confrontation and jury trial *(People v Dwight S.,* 29 NY2d 172, 176; *Matter of D.,* 27 NY2d 90, 98). There is no absolute right under the statute, however, that one eligible be adjudicated a youthful offender; whether to make such an adjudication lies wholly within the discretion of the court (CPL 720.20; *People v Rosati,* 39 AD2d 592). True, it is a reviewable discretion (cf. *People v Kerr,* 43 AD2d 895); nevertheless, it is also the fact that the eligible youth cannot claim youthful offender status simply because he is within the qualified age group. The right, if so it may be called, is only to be considered for youthful offender treatment.

Such an attenuated right should not survive a conscious and knowing plea of guilty. A defendant thereby elects not to stand trial; Santiago and Drummond, in the cases on appeal, have been allowed to plead guilty to one of a number of crimes charged in satisfaction of an entire indictment or to a lesser crime than for which he had been indicted. Under these circumstances, the benefits derived by these defendants constitute grounds for waiver of the claim now made for youthful offender treatment.

Moreover, as pointed out by Mr. Justice SHAPIRO in a recent decision involving the constitutionality of another provision of the Youthful Offender Procedure (CPL 720.20), when the

conviction as the result of a plea of guilty to a lesser crime is the product of plea negotiation, a defendant, as a matter of policy, should be held to his bargain *(People v Drayton,* 47 AD2d 952, 957, n 1). In Drummond's case the record shows clearly that the plea was made by her in contemplation of a sentence to an indeterminate term of imprisonment having a maximum of 12 years. Moreover, no application for youthful offender treatment was ever made by her. In Santiago's case, the record shows that the plea was made after the trial court made clear to him that the mandatory sentence was one year to life imprisonment. In his case the plea to one count of the indictment was accepted in full satisfaction of the several counts of the indictment. Thus, both entered into a bargain with full knowledge of the consequences and with the receipt of benefits under the bargain not otherwise available to them (cf. *People v Foster,* 19 NY2d 150). The acceptance of the benefits precludes the maintenance of the claims now made.[5]

### THE CONSTITUTIONAL CLAIMS

Jimeness did not plead guilty, but stood trial and was found guilty of one of the counts for which he was indicted—a count which precludes consideration for youthful offender treatment. Nevertheless, he was accorded youthful offender treatment. He now contends that the Criminal Term was correct in disregarding the statute, on the ground that it violates both due process and the equal protection of the laws. Moreover, the same claims are made by Santiago and Drummond and, despite our belief that their pleas of guilty waive their right to raise the claims, we are disposed to consider the constitutional issues on behalf of all three defendants.

Initially, we observe that we see no violation of procedural due process here. All three defendants were afforded the traditional stages in the criminal process, indictment, arraign-

---

5. We are aware of the recent decision of the Supreme Court in *Menna v New York* (44 US Law Week 3304, Nov. 18, 1975), holding that a plea of guilty does not foreclose a claim of double jeopardy. As we understand it, that decision does not overrule *Tollett v Henderson* (411 US 258, *supra)* and kindred cases. *Menna* holds that a counseled plea of guilty renders irrelevant constitutional issues not logically inconsistent with guilt and does not prevent conviction if guilt is established; and, further, that no matter how valid the fact of guilt may be, the State cannot convict a defendant twice for the same crime. Here we think the plea of guilty renders irrelevant the constitutional issues raised, for they are not logically inconsistent with guilt.

ment, trial or plea of guilty and sentencing. The defendants' point is, rather, that substantive due process is breached because the charge in the indictment persisted beyond conviction in rendering them ineligible for youthful offender treatment. That is, the defendants say that since they have been convicted of a crime which, had they been indicted for it, would have permitted youthful offender treatment, they have been unconstitutionally affected because the higher charge in the indictment forbids eligibility. In the cases of Santiago and Drummond this claim is true, for by their pleas of guilty they were convicted of one of several counts in the indictment or of a lesser charge than that for which they were indicted. In the case of Jimeness the claim is not true; his conviction was for the same crime for which he was indicted and which originally rendered him ineligible. Hence, it may be said that he has not been harmed by the statute (contra, see *People v Charles S.,* 79 Misc 2d 1058). Even so, we believe that we should reach the merits of the claim of lack of due process on behalf of all the defendants.

In our State the Legislature has wide power to prescribe the nature and definition of crimes and the procedure to be followed in the prosecution and punishment of defendants *(Matter of Rudd v Hazard,* 266 NY 302, 306; *People ex rel. Forsyth v Court of Sessions of Monroe County,* 141 NY 288; *Matter of Dodd v Martin,* 248 NY 394, 398–399; *People v Gowasky,* 244 NY 451; cf. *Matter of Lynch,* 8 Cal 3d 410). Under familiar principles, a strong presumption must be entertained that the Legislature has determined that facts exist indicating the need for the enactment of the statute and that it has responded to that need by providing the procedure laid down in the statute *(Matter of Taylor v Sise,* 33 NY2d 357; *East New York Sav. Bank v Hahn,* 293 NY 622, 628, affd 326 US 230).

The doctrine of substantive due process is concerned with whether a particular State regulation of an individual interest is justified. Where the individual interest involves life, liberty or property, the test under substantive due process is whether there is a reasonable connection between the statute and the promotion of the safety and welfare of the community *(People v Pagnotta,* 25 NY2d 333, 337; *People v Bunis,* 9 NY2d 1, 4; *People v Broadie,* 37 NY2d 100, 117). Even were we to consider that the means adopted by the Legislature to accomplish its purpose are debatable, that would not suffice to declare the

statute unconstitutional *(Lincoln Bldg. Assoc. v Barr,* 1 NY2d 413, 415, app dsmd 355 US 12; *People v Broadie, supra).*

Where, however, the individual interest involves a fundamental right, the test of substantive due process is whether a "compelling state interest" was advanced by the regulation, and whether the regulation was the least restrictive method available to effectuate the "compelling state interest" *(Roe v Wade,* 410 US 113, 155; *National Assn. for Advancement of Colored People v Button,* 371 US 415, 438). The test of "reasonableness" is similar to the test of "rational grounds" used in determining a claim of unequal protection of the laws; and the test of "least restrictive method" in advancing a "compelling state interest" is also similar to the test of the "two-tiered" standard used in considering equal protection, as we shall see beyond. Rather than to discuss the bases of the legislation twice, we think it preferable to consider the claims of a violation of due process and equal protection together. For the purpose of these appeals, the two constitutional claims coalesce; and we view the claim of lack of substantive due process as subsumed under the more critical claim of the breach of equal protection of the laws.

The defendants' contentions regarding equal protection are relatively simple: they say that they are treated differently from others similarly circumstanced in that they may not receive youthful offender treatment because of the charge in the indictment, though convicted of a lesser crime permitting eligibility, whereas others indicted and convicted of the same lesser crime may receive youthful offender treatment. This result, they claim, deprives them of the equal protection of the law.

The test to be applied in evaluating this argument has been undergoing evolutionary changes. Clearly, legislation not touching "suspect" classifications of race, national origin and religion, or interests of fundamental importance, must be judged by the test whether a rational basis exists for the classifications made *(James v Strange,* 407 US 128, 140; *Dandridge v Williams,* 397 US 471, 487). "The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" *(Oyler v Boles,* 368 US 448, 456; cf. *People v Goodman,* 31 NY2d 262, 268). If, however, the discrimination rests on race, religion or national origin, or affects interests of fundamental importance, the State must establish that the statute is necessary to vindicate a compelling govern-

mental interest and that it does not impose more burdens than are reasonably needed to accomplish the purpose *(Shapiro v Thompson,* 394 US 618, 634; *San Antonio School Dist. v Rodriguez,* 411 US 1, 33–34). Thus, a preliminary question must be met: whether the classification must be examined under the test of rationality alone, or under the more rigorous test of justification through a compelling State interest.[6]

Clearly, the statute does not fall within the first branch of the preliminary question—it does not touch a suspect classification based on race, religion or national origin. Nor do we think that it falls within the second branch concerning interests of fundamental importance, though this construction presents a closer issue. Differences in treatment of criminal offenders have been considered not to affect an interest of fundamental concern (see *Marshall v United States,* 414 US 417; *McGinnis v Royster,* 410 US 263; *United States ex rel. McGill v Schubin,* 475 F2d 1257). As was said in *Marshall v United States* (414 US 417, 428, *supra):* "It should be recognized that the classification selected by Congress is not one which is directed 'against' any individual or category of persons, but rather it represents a policy choice in an experimental program made by that branch of Government vested with the power to make such choices. The Court has frequently noted that legislative classifications need not be perfect or ideal. The line drawn by Congress at two felonies, for example, might, with as much soundness, have been drawn instead at one, but this was for legislative, not judicial choice."

The States, therefore, may legislate, within the test of rationality, to grant youths of a certain age span benefits not accorded other criminal offenders without running afoul of demonstrating a compelling State interest; this approach allows the States to experiment in a program which will confer a benefit on one but not on another in the criminal process on the basis of a choice rationally reached (cf. *People v Butler,* 46 AD2d 422, 425; *United States v Craven,* 478 F2d 1329, 1338, cert den 414 US 866, rehearing den 414 US 1086; *Smith v Follette,* 445 F2d 955). We turn, consequently, to the statute.

The Legislature, from the beginning of the youthful offender program, excluded youths who had been guilty of criminal conduct punishable by death or life imprisonment—the pun-

---

6. The dissenting opinion of Judge JONES in *Matter of Malpica-Orsini* (36 NY2d 568, 578, 581–583) treats perceptively of these considerations.

ishment now inflicted on a defendant guilty of a class A felony. That punishment is customarily reserved for defendants guilty of the most serious felonies. The Legislature evidently did not desire to confer the benefits flowing from youthful offender treatment on those youths whose conduct was of such heinous character; and it is not contended by the defendants that this discrimination is without a rational basis.

When the revision of the youthful offender provisions of the Code of Criminal Procedure was accomplished through the enactment of the present article 720 of the CPL, the Legislature decided to continue the distinction in the standard of eligibility, but to alter the time of determination of such status from a stage prior to conviction to a stage subsequent to conviction. This change was made because the procedure under the code had proved to be cumbersome and administratively inadequate. The charge in the indictment, not the charge for which the defendant was found guilty, became the legislative choice upon which eligibility was determined. In making that choice, the Legislature did not discriminate without rational basis.

Throughout the criminal process, there exist certain discretionary choices which are inherent in a system of law enforcement. First, a prosecutorial discretion exists that is unreviewable: that is, whether an individual shall be prosecuted, and for what crime, or degree of crime. That discretion is protected from oversight by the courts under the doctrine of separation of powers *(United States v Cox,* 342 F2d 167, cert den *sub nom Cox v Hauberg,* 381 US 935; *Newman v United States,* 382 F2d 479; cf. *Nader v Saxbe,* 497 F2d 676, 679, n 18; see K. Davis, Discretionary Justice: A Preliminary Inquiry, p 165). Thus, at that point in the process, the opportunity for different treatment between persons similarly situated presents itself.

Second, the Grand Jury may exercise its own discretion either in not voting an indictment or in returning an indictment against an individual for one or more counts (Kadish, Legal Norm and Discretion in the Police and Sentencing Processes, 75 Harv L Rev 904, 905, n 2, 916, n 35). At that point, too, persons similarly situated may be differently treated.

Third, the petit jury may, by its verdict exercise its power of nullification or of mercy by finding a defendant not guilty, or guilty of a lesser degree of the crime charged, even as to

codefendants similarly situated (J. Frank, Courts on Trial, pp 14–36; S. Ingber, A Dialectic: The Fulfillment and Decrease of Passion in Criminal Law, 28 Rutg L Rev 861, 932–933; A. Scheflin, Jury Nullification: The Right to Say No, 45 S Cal L Rev 168, 187). At this third point, persons similarly situated may be differently treated (cf. *People v Cohen,* 223 NY 406, 429–430; *People v Kief,* 126 NY 661, 664; *People v O'Dell,* 34 AD2d 856).

The Legislature has in effect elevated the second point—the action of the Grand Jury—for its choice in the determination of eligibility for youthful offender treatment. That choice may, of course, result in different treatment of persons similarly situated. But the same result of difference in treatment may arise from the verdict of the petit jury or the discretion of the prosecutor. Thus, two youths implicated equally in the commission of a murder, and indicted for that crime, may be differentiated at trial by the petit jury to the end that one is found guilty of manslaughter (allowing eligibility) and the other of murder (not allowing eligibility).

The Legislature, in short, was entitled to combine the ease in the administration of judicial process with the obvious differences of treatment inhering in the usual operation of the enforcement of the criminal law as grounds for the creation of the eligibility standards of the statute. It is not important which of the grounds is primary. As was said in *McGinnis v Royster* (410 US 263, 276, *supra)*: "Yet, our decisions do not authorize courts to pick and choose among legitimate legislative aims to determine which is primary and which subordinate. Rather, legislative solutions must be respected if the 'distinctions drawn have some basis in practical experience', *South Carolina v. Katzenbach,* 383 U.S. 301, 331 (1966), or if some legitimate state interest is advanced, *Dandridge v. Williams,* 397 U.S., at 486. So long as the state purpose upholding a statutory class is legitimate and nonillusory, its lack of primacy is not disqualifying."

The statute, accordingly, satisfies an administrative purpose and fixes an objective test for eligibility. That, incidentally, some youths will not benefit to the same degree as others does not abridge their constitutional rights. The quarrel of the defendants Santiago and Jimeness is, indeed, with the inclusion of the violation of the narcotic laws within the definition of class A felonies; that, however, was a classification plainly within the legislative competence. The discretionary exercise

of power implicit within the statute does not constitute a constitutional infirmity, as decisions in the Federal field attest (see *Cox v United States,* 473 F2d 334; *Washington v United States,* 401 F2d 915; *United States v Sacco,* 428 F2d 264; cf. *United States v Bland,* 472 F2d 1329). The finding of the Grand Jury that sufficient evidence existed to justify the return of an indictment containing charges of the level of a class A felony provided a clear and permissible expression of the goal of the Legislature to deny to youths charged with those crimes the benefits of youthful offender process, and complied with both substantive due process and equal protection standards.[7]

We conclude, therefore, that the statute does not violate the dictates either of due process or equal protection of the laws. We affirm the judgments in *People v Santiago* and *People v Drummond.* We reverse the sentence in *People v Jimeness* and remand for resentencing.

RABIN, Acting P. J. (dissenting). In my view, CPL 720.10 (subd 2) violates the constitutionally-protected guarantees of due process and equal protection of the laws. The equal protection violation results from the arbitrary distinctions drawn by the statute between classes of individuals predicated on the seriousness of the crime *charged in the indictment.* The anomalous situation created by the statute is arbitrary and capricious and unsupported by any rational basis. As stated by Mr. Justice GREENBLOTT in his dissent in *People v Goodwin* (49 AD2d 53, 56–57), a case involving the same issue now confronted by this court: "It cannot be denied that a capricious result is obtained where a youth indicted for a class B felony, and convicted of that crime receives youthful offender consideration, while another youth originally indicted for a class A felony count is convicted of a class E felony, and is then refused youthful offender consideration. The classification denying such procedures to youths previously convicted of a felony, for example, is reasonable. I see no rational basis for an inequality of treatment amongst youths who have been

---

7. The effect of the indictment is more than simply the allegation of the charge against the defendant; it may (1) affect the right to trial by jury *(Duncan v Louisiana,* 391 US 145), (2) affect the defendant's conduct to transact certain types of business *(United States v Craven,* 478 F2d 1329), (3) define the forum (Family Ct Act, § 813), (4) fix the number of peremptory challenges (CPL 270.25, subd 2), or (5) allow a longer period for the prosecution to move a case for trial (CPL 30.10).

convicted of the same offense merely because one of them had originally been charged with a higher crime."

While statutory distinctions based on rational grounds may be drawn between classes of individuals, the distinctions made " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike' " *(Reed v Reed,* 404 US 71, 76). At the very least, "some relevance to the purpose for which the classification is made" must be shown *(Baxstrom v Herold,* 383 US 107, 111; see, also, *Dandridge v Williams,* 397 US 471, 485; *Rinaldi v Yeager,* 384 US 305, 309). The statute under review fails to satisfy these tests; the classification it makes serves no "legitimate and nonillusory" State purpose *(McGinnis v Royster,* 410 US 263, 276). A far different situation is presented where the classification created in a statute defining eligibility for a program of postconviction treatment is grounded upon an articulable rationale. An exclusion from eligibility based upon the prior conviction of a felony is a good example (see CPL 720.10, subd 2, par [b]; *People v Goodwin, supra,* p 55; *Marshall v United States,* 414 US 417, 423–425).

In my view, the statute also fails to comport with the concept of due process of law. "Even though the concept of due process of law is not final and fixed * * * [its] limits are derived from considerations that are fused in the whole nature of our judicial process" *(Rochin v California,* 342 US 165, 170). By according a decisive role in the determination of which youths are eligible for youthful offender treatment to nothing more substantial than a written statement of unproven allegations (see CPL 1.20, subd 3), the statute offends reasonable notions of fairness. There is no reasonable justification or necessity for fixing the degree of the crime charged as the determinative factor. It is clear that an indictment does not survive a trial and verdict; it should play no part in determining the type of postconviction treatment accorded to youngsters otherwise eligible for youthful offender consideration (see *People v Brian R.,* 78 Misc 2d 616, 619, affd 47 AD2d 599).

I do not agree with the majority's position that a significant question of standing to challenge the constitutionality of the statute is presented by the Santiago and Drummond appeals. As I read the majority's resolution of this issue, the acceptance by Santiago and Drummond of the benefits of their

guilty pleas, knowingly and voluntarily made, precludes their constitutional challenges on the ground that the entry of the pleas waives all nonjurisdictional defects (see *People v La Ruffa,* 34 NY2d 242, 245). Although the proposition of law is certainly correct, I do not see how it applies in this situation. The constitutional infirmity in the *statute* is simply not akin to a waivable defect of procedure or to the knowing relinquishment of some constitutionally-guaranteed right, such as the right to trial by jury (NY Const, art I, § 2). What we are dealing with here is an issue of *eligibility* for a system of postconviction treatment rather than a question of the voluntary bargaining-away of rights enjoyed by an individual. In short, the right to be considered for youthful offender treatment, since it is a matter of statutory definition, is not a right which can be relinquished by a defendant as the *quid pro quo* of a plea bargain. Any otherwise eligible youth indicted for a class A felony and thereby deprived of consideration for youthful offender treatment has standing to challenge the statute (see *People v Charles S.,* 79 Misc 2d 1058).

I would reverse the judgments as to Santiago and Drummond and would remand for compliance with the procedure set forth in CPL 720.20 regarding youthful offender determinations. I would affirm the judgment as to Jimeness.

In *People v Santiago,* LATHAM and BRENNAN, JJ., concur with HOPKINS, J.; RABIN, Acting P. J., dissents and votes to reverse and remand the case to the Supreme Court, Westchester County, for compliance with the procedure set forth in CPL 720.20 regarding youthful offender determinations, in an opinion, in which CHRIST, J., concurs.

Judgment affirmed.

In *People v Drummond,* LATHAM and BRENNAN, JJ., concur with HOPKINS, J.; RABIN, Acting P. J., dissents and votes to reverse and remand the case to the County Court, Suffolk County, for compliance with the procedure set forth in CPL 720.20 regarding youthful offender determinations, in an opinion, in which CHRIST, J., concurs.

Judgment affirmed.

In *People v Jimeness,* LATHAM and BRENNAN, JJ., concur with HOPKINS, J.; RABIN, Acting P. J., dissents and votes to affirm, in an opinion, in which CHRIST, J., concurs.

Sentence reversed, on the law, and case remanded to the Criminal Term for resentence.