■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DIXON FRICK BURDEN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered November 25, 1975, convicting him of criminal possession of a controlled substance in the fifth degree, upon a jury verdict, and imposing sentence. Judgment affirmed (see *People v Drayton,* 39 NY2d 580; *People v Santiago,* 51 AD2d 1). With respect to the issues raised by the appellant of lack of due process and unconstitutionality of CPL 720.10 (subd 2, par [a]), we point to *Montgomery v Daniels* (38 NY2d 41, 54) where the court, citing, *inter alia, People v Broadie* (37 NY2d 100, 117), stated: "In approaching this question, the court has recognized that as a matter of substantive law every legislative enactment is deemed to be constitutional until its challengers have satisfied the court to the contrary". At bar, the challenger has not successfully borne that burden. Hopkins, Acting P. J., Latham, Cohalan and Hawkins, JJ., concur; Titone, J., dissents and votes to reverse the sentence and remit the case to the Criminal Term for further proceedings, with the following memorandum: This case involves the application of CPL 720.10 (subd 2, par [a]), which denies youthful offender treatment to an otherwise eligible youth because he was indicted for a class A felony, to a youth who was acquitted of such charge by a jury of his peers. On June 22, 1974, defendant was returning from India when a

customs inspection at Kennedy International Airport revealed that he was transporting some controlled substances. On August 7, 1974 defendant was indicted and charged with the crimes of criminal possession of a controlled substance (opium) in the second degree, a class A-II felony (Penal Law, § 220.18 [count one]), and criminal possession of a controlled substance (marijuana) in the fifth degree, a class C felony (Penal Law, § 220.09, subd 10 [count two]). After a jury trial, defendant was acquitted upon the first count of the indictment, but convicted upon the second count. On November 25, 1975 he was sentenced to five years probation. Mr. Justice Goldstein determined that, under CPL 720.10 (subd 2), he did not have the jurisdiction to sentence defendant as a youthful offender, although he characterized defendant's presentence report as "superb". Defendant, on appeal, contests the trial court's refusal to grant him youthful offender treatment, contending that the relevant statute is unconstitutional. CPL 720.10 was recently held to be constitutional by this court in *People v Santiago* (51 AD2d 1). That case considered the sentences meted out to three youths who were indicted for class A felonies and who fell within the prohibition of CPL 720.10. Of the three appellants in that case, one had been *convicted* of a class A-III felony, and the other two had voluntarily *pleaded guilty* to lesser crimes. This case can be distinguished from *People v Santiago (supra)* on its facts. The basic distinction lies in the fact that, in the case at bar, defendant was *acquitted* of the class A felony charge by a jury. It is this jury verdict of acquittal which operates to invalidate the decision of the trial court. *People v Santiago (supra)* was predicated upon the theory that differences in treatment of criminal offenders do not affect interests of fundamental concern and, thus, are subject merely to a test of rationality. In *Santiago* (p 12) we stated that the youthful offender determination was to be made at the time of the indictment because the prior procedure, under which the determination was made at a time subsequent to conviction, "had proved to be cumbersome and administratively inadequate." Subsequently, in a recent decision *(People v Drayton,* 39 NY2d 580), the Court of Appeals referred to "judicial economy" as the rationale for the distinction based upon the gravity of the crime charged. This court, in *Santiago,* further reasoned that (pp 11–12): "The Legislature, from the beginning of the youthful offender program, excluded youths who had been *guilty* of criminal conduct punishable by death or life imprisonment—the punishment now inflicted on a defendant guilty of a class A felony. That punishment is customarily reserved for defendants guilty of the most serious felonies. The Legislature evidently did not desire to confer the benefits flowing from youthful offender treatment on those youths whose conduct was of such heinous character; and it is not contended by the defendants that this discrimination is without a rational basis" (emphasis supplied). The change in the method of classification is invalid in a case such as the one at bar, where the initial charge has been adjudged to be unfounded by a jury of one's peers; I do not quarrel with it in cases where the defendant pleads guilty to a lesser charge. The right to a trial by jury in criminal cases is "fundamental to the American scheme of justice"; it is a guarantee of the Bill of Rights which has been extended to the States through the due process clause of the Fourteenth Amendment *(Duncan v Louisiana,* 391 US 145, 148–150). The provision for a jury trial was "clearly intended to protect the accused from oppression by the Government" *(Singer v United States,* 380 US 24, 31). In particular, a trial by a jury of one's peers was to be a safeguard against *"unfounded criminal charges* brought to eliminate enemies and against judges too responsive to the voice of higher authority" *(Duncan v Louisiana, supra,* p

156) (emphasis supplied). It has not been unknown for District Attorneys' offices, on occasion, to overindict. In addition, "Although an indictment and the grade of offense charged can give rise to ancillary consequences, some of which are described above, the added burdens imposed by the untested accusation must be most circumscribed and related to the purpose and function of the accusatory instrument. *In no event, however, may the indictment survive or exist independently after an adjudication of the charges contained therein.* Such independent existence is particularly offensive to notions of due process when it is recalled that a refusal to grant a motion to dismiss the class A felony charge might be justified only because the evidence before the Grand Jury was sufficient to sustain some lesser included offense not of A felony grade. Ultimately, of course, the penalties prescribed for particular offenses must depend upon the crime of which the defendant is convicted, not the offense with which he was originally charged" *(People v Brian R.,* 78 Misc 2d 616, 619, affd 47 AD2d 599 [emphasis supplied]). A verdict of acquittal eradicates the indictment and returns the accused to a state of unclouded innocence. To illustrate, section 79-e of the Civil Rights Law provides that, upon acquittal, the accused may demand that the State return all of his fingerprints, palm prints and photographs taken while the action against him was pending, unless he had previously been convicted of a crime or unless another criminal proceeding is pending. Since a jury verdict is one of the fundamental rights of a defendant in a criminal trial, any impairment of the effect of a verdict of acquittal should be subject to the strictest scrutiny to see whether a compelling State interest is advanced by the statute and whether this method was the least restrictive means of effectuating such interest (see *Roe v Wade,* 410 US 113; *NAACP v Button,* 371 US 415, 438). Clearly, there is no compelling State interest in depriving an arrestee of the legitimate effect of a jury verdict of acquittal. The idea that the State's interest in convicting wrongdoers is entirely satisfied by one fair trial ending in an acquittal, and that the accused's interests in repose must thereafter be given precedence, is undoubtedly a " 'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental' " *(Palko v Connecticut,* 302 US 319, 325). Moreover, the statute's effect, of having the onus of the indictment linger over the exonerated accused, is akin to the principles which underlie the prohibition against double jeopardy, which was made applicable to the States in *Benton v Maryland* (395 US 784). The idea underlying the prohibition against double jeopardy is that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity" *(Green v United States,* 355 US 184, 187). A very important component of this principle is the idea that "no man shall more than once be placed in peril of legal penalties upon the same accusation" *(Matter of Lange,* 18 Wall [85 US] 163, 173). In the case at bar, defendant is, in effect, being penalized for being accused of an offense of which he was acquitted. In *Green v United States (supra),* defendant was indicted for first degree murder, but convicted only of second degree murder. Upon appeal, his conviction was overturned. Subsequently, he was retried and convicted of murder in the first degree. The court held that the trial on the charge of murder in the first degree violated the double jeopardy clause because the first conviction of murder in the second degree amounted to a tacit acquittal of the charge of murder in the first degree. The court held that he should not run the gauntlet on the first charge again. Implicit

therein is the suggestion that the charge in the first indictment, and all its appurtenant significance, was wiped out by the jury verdict of acquittal. The lingering effect of the indictment in the present case runs afoul of the same rule.