Leonard Leigh Finz, J.
The People move pursuant to CPL 440.40 to set aside a "sentence rendered June 18, 1975 (Finz, J.) adjudicating the defendant a Youthful Offender and sentencing him to a term of probation for five years.”
The motion herein was undoubtedly inspired by the recent decision of the Appellate Division in this Department (People v Santiago, 51 AD2d 1) holding that CPL 720.10, which governs the granting of youthful offender treatment in certain cases, was not violative of the New York State Constitution notwithstanding that said section removed automatically an otherwise eligible youth from youthful offender consideration by reason of an indictment for an A felony. In view of the expressions of that learned court in Santiago, and other cases (see People v Burden, 53 AD2d 867), it would be presumptuous for this court to assert a contrary view, and, indeed none will be advanced in this decision. What does follow, however, is based entirely upon a legal foundation which bears no relationship to the constitutional question addressed in Santiago.
*953 The importance and novelty of the many questions raised on this motion invites the following discussion.
The defendant herein was adjudicated a youthful offender on March 6, 1975 (People v Rubins S., 81 Misc 2d 305) after pleading guilty to an A-III felony. He was sentenced to five years’ probation on June 18, 1975 (People v Rubin S., 82 Misc 2d 884). After imposition of the sentence and within the time provided by law, the District Attorney filed a notice of appeal from the judgment. It is conceded that no further action was taken by the District Attorney to perfect that appeal.
In this regard, section 670.4 (subd [a], par [5]) of the Rules of the Appellate Division of the Supreme Court, Second Department (as amd Jan. 13, 1976) provide: "Notwithstanding any of the provisions of this section or any of the other rules governing procedure in this court, an appeal must be argued or submitted within nine months after an appeal is taken, unless, for good cause shown, an order shall have been entered upon motion therefor, extending such time. (Emphasis supplied.) Absent such order, if it is not so argued or submitted, the appeal shall be deemed abandoned and shall be dismissed without costs for neglect to prosecute. The clerk shall make an appropriate entry without the necessity of an order.” (22 NYCRR 670.4 [a] [5].) Section 670.4 (subd [b], par [1]) further provides: "Insofar as they may be applicable, the provisions of subdivision (a) shall govern motions to dismiss a criminal cause.” (22 NYCRR 670.4 [b] [1].) In this connection: "In the absence of proof to the contrary, there is a very strong presumption embodied in the maxim, 'omnia praesumuntur rite esse acta,’ that public officers have properly discharged the duties of their office * * * the law, in the absence of any circumstances or proof indicating the contrary, presumes not only that such public officers perform the duties of their office, but that acts within the sphere of their official duty were done regularly, legally, and reasonably, with honesty and good conscience in accordance with law.” (21 NY Jur, Evidence, pp 243, 244.) It is presumed therefore that the clerk has made the "appropriate entry without the necessity of an order”, and that the appeal therefore can be deemed to have been abandoned and dismissed "for neglect to prosecute” (22 NYCRR 670.4 [a] [5].)
HISTORY OF CPL 440.40
Thereby laying to rest any pending appeal considerations, *954 the court now addresses itself to the section under which the People move to determine its applicability to the instant matter. CPL 440.40 is the successor of section 764-a of the Code of Criminal Procedure and was enacted by law in 1970 (L 1970, ch 996, § 1), effective September 1, 1971. Examination of the report of the Temporary Commission on Revision of the Penal Law and Criminal Code reveals that there is no direct reference to CPL 440.40. While the report refers to "post judgment motions — to vacate judgment and set aside sentence (Art. 440)” the only reference to this article is as follows: "The two post-judgment motions encompass all contentions challenging an indictment or other accusatory instrument which now sail under the flags of coram nobis, motion for resentence, motion for a new trial by reason of newly discovered evidence, state habeas corpus and federal habeas corpus (§§ 440.10(1), 440.20(1).”
The commentary on this section by Richard G. Denzer (now a Judge of the Court of Claims) states: "This section, which is new, expressly authorizes the trial court, upon motion of the People, to correct an illegal sentence imposed by it after service of the sentence has commenced.” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 440.40, p 348.)
ANALYSIS OF CPL 440.40 (SUED 1)
Having examined into the evolutionary development of CPL 440.40 we proceed now to its application. In this context, CPL 440.40 (subd 1) provides that not more than one year after entry of a judgment the court may upon motion of the People set aside the sentence upon the ground that it was invalid as a matter of law. Subdivision 2 provides: notwithstanding the previous subdivision the court must deny the motion when the issue was previously determined on the merits "upon an appeal from the judgment or sentence” unless there has been a "retroactively effective change in the law controlling such issue”. Subdivision 3 states that notwithstanding subdivision 1 the court may deny the motion "when the ground or issue raised thereupon was previously determined on the merits upon a prior motion or proceeding in a court in this State, other than an appeal from the judgment or sentence, unless since the time of such determination there has been a retroactively effective change in the law controlling such issue”.
It would appear, therefore, that a denial of the motion is *955 mandatory where there is a previous determination on the ground or issue upon appeal in the same case under consideration. It is clearly discretionary, according to subdivision 3, however, where the issue was previously determined in a manner other than an appeal from the instant judgment or upon a motion in the Federal court. "Despite such circumstance, however, the court, in the interests of justice and for good cause shown, may in its discretion grant the motion if it is otherwise meritorious.” (CPL 440.40, subd 3, emphasis added.)
JUDICIAL DISCRETION
The statutory discretion granted to the court under the language of CPL 440.40 (subds 1, 3) warrants a discussion relative to the proper exercise of judicial discretionary power. In this regard, a broad and widely accepted definition of discretion can be found in Bouvier’s Dictionary as "that part of the judicial function which decides questions arising in the trial of a cause, according to the particular circumstances of each case, and as to which the judgment of the court is uncontrolled by fixed rules of law. The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.” Conversely stated, "Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.” (Delno v Market St. Ry. Co., 124 F2d 965, 967; see, also, Grant v Corbitt, 95 So 2d 25 [Fla]; Matter of Peck v Stone, 32 AD2d 506; Murray v Buell, 74 Wis 14.)
Hart and Sacks define certain other types of discretion as "the power to choose between two or more courses of action each of which is thought of as permissible.” (H. Hart and A. Sacks, The Legal Process, p 162 [tent ed, 1958].)
In an essay by Kenneth Culp Davis on Case Law and Discretion (Administrative Law Text, pp 99-100 [3d ed, 1972]) he stated: "Law and discretion are not separated by a sharp line but by a zone, much as night and day are separated by dawn. Instead of the two categories of law and discretion, we could recognize five or fifty, as may be convenient. For present purposes, five seem convenient — those in which the tribunal’s *956 prevailing attitude is that precedents are (1) almost always binding, (2) always considered and usually binding, (3) usually considered but seldom binding, (4) occasionally considered but never binding, and (5) almost never considered. The first two categories fit what we usually call case law, the last two fit what we usually call discretion, and the third is the zone between law and discretion.”
Bearing, therefore, on the subject of discretion, one of the considerations herein is the fact that the People did not proceed diligently to prosecute the appeal, which was therefore dismissed.
DISTINCTION BETWEEN SENTENCE AND JUDGMENT
As earlier stated, the defendant was adjudged a youthful offender upon his prior plea of guilty to an A-III felony. Thus, and in accordance with CPL 720.20 (subd 3), the conviction was replaced by a youthful offender adjudication. The appeal taken therefrom as stated earlier was never prosecuted to a conclusion. The point to be stressed here is that the adjudication and the sentence involve separate component parts of the judgment and are not synonymous. In further support of this, there is to be found a distinct provision (CPL 720.25) which governs the imposition of youthful offender sentences, after an adjudication to the foregoing effect has been made under CPL 720.30.
To further emphasize the difference between the adjudication (or conviction) and the sentence, one need but refer to the precise definitions set forth in CPL 1.20 (subds 13, 14). Moreover, subdivision 15 of this section on definitions states that "judgment is comprised of a conviction and the sentence imposed thereon and is completed by imposition and entry of the sentence”. The conclusion to be reached, therefore, is that CPL 440.40 grants leave to the People to move to set aside the sentence on the ground that it was invalid as a matter of law. Here, the People, however, in addition to moving to set aside' the sentence imposed on this defendant, in effect, are moving to set aside the entire judgment, despite the fact that no such right exists in the section under which this application is made. Since this is a new section, (L 1970, ch 996, § 1, eff Sept. 1, 1971) it may be that the failure to prosecute the appeal may have created a condition peculiar to this case. Thus the People might have moved to vacate the sentence of probation as not being authorized by law. Instead, the entire thrust of their *957 attack is focused upon setting aside the adjudication of youthful offender on the principal ground that subsequent decisions should now be given retroactive application.
RETROACTIVE APPLICATION OF THE LAW
At the time of the granting of youthful offender adjudication in March, 1975 and the later imposition of the sentence in June, 1975, neither the adjudication nor the sentence was at variance with then existing law. (People v Brian R., 78 Misc 2d 616, affd 47 AD2d 599.) The question to be addressed, therefore, is whether subsequent appellate decisions operate retroactively to vitiate the sentence imposed. A brief review of decisional authority relating to this issue now becomes necessary.
In Morhous v Supreme Court of New York (293 NY 131, 140) the court held that:
"An appeal to a higher court is ordinarily the appropriate corrective process for error at the trial and appearing in the record; a motion to vacate the judgment and for a new trial is ordinarily the appropriate corrective process for defect not appearing on the record or where for any other reason an appeal would not furnish a remedy”.
In People ex rel. Mangual v La Valle (17 AD2d 874), the defendant sought to have his conviction set aside on the ground that the evidence with which he was convicted, was illegally obtained as determined in Mapp v Ohio (367 US 643). The court held (pp 874-875): "Relator was convicted of felonious possession of narcotic drugs and felonious possession of narcotic drugs with intent to sell and sentenced on December 10, 1957 to two concurrent terms of five to eight years each. No appeal was taken from these convictions and sentences. Relator now seeks his freedom on the grounds that the evidence upon which he was convicted was inadmissible since it was obtained in violation of the Fourth Amendment of the United States Constitution (Mapp v Ohio, 367 U.S. 643). However, even assuming that the conviction rested upon erroneously received evidence, since the petition clearly indicates that relator’s time to appeal had expired prior to the decision in Mapp, relator is not entitled to a reversal of his conviction by habeas corpus or otherwise (People v Muller, 11 NY2d 154; People v Loria, 10 NY2d 368; People ex rel. Sullivan v Fay, 16 AD2d 823).” (Emphasis added.) In People v Seligman (35 AD2d 591, 592, mod 28 NY2d 788), the defend *958 ant was convicted on the basis of electronic recording of conversations obtained without prior judicial authorization, allegedly in violation of Katz v United States (389 US 347), the court held: "It would avail defendants nothing if Katz were applicable to such recordings since they were made prior to December 18, 1967, the date of the Katz decision, and its holding is not retroactive (Desist v United States, 394 US 244, see, also, United States v Kaufer, 406 F2d 550, affd sub. nom. Kaufer v United States, 394 U.S. 458).”
Similarly, in People v Feinlowitz (29 NY2d 176, mot to amd remittitur den 29 NY2d 695, cert den 405 US 963) there is an in depth discussion of the wiretap laws as they existed at the time of the conviction of the defendant and the subsequent changes therein. Resolving this question the court stated (p 185): "To exclude the wiretap evidence in this case on the basis of Lee would, in effect,, be enforcing a statutory policy, since substantially modified and no longer applicable. We believe the well-established rule, that we give effect to the law as it exists at the time of our decision, should be adhered to. (People v Lorai, 10 NY2d 368, 370; Knapp v Fasbender, 1 NY2d 212, 243).”
A question related to retroactivity was considered in Matter of Keith G. (37 AD2d 971) which involved the standard to be applied in juvenile delinquency proceedings. There the court held: "In view of the decision in Matter of Ivan V. (29 NY2d 583) we are constrained to hold that Matter of Winship (397 US 358), insofar as that case mandated the reasonable doubt standard of proof for juvenile delinquency proceedings, is not to be applied retroactively to the instant case which was in the appellate process when Winship was decided.” (Emphasis added.)
Matter of Louis H. (36 AD2d 912) also involved the question of the quantum of evidence necessary to convict in a case of juvenile delinquency: "We have held that the Winship ruling is to be applied retroactively to cases which were within the appellate process, as this one was, when Winship was decided (Matter of Ivan V., 35 AD2d 806).”
People v Bennett (37 AD2d 631, affd 30 NY2d 283) is of particular significance since this was a coram nobis proceeding brought by the defendant-appellant seeking to vacate his conviction on the ground that his pretrial identification was so tainted by the police as to destroy the basis of the in-court identification. The court stated (p 631):
*959 "In Stovall v. Denno (388 U.S. 293) it was held that the right to counsel established in Wade would be applied prospectively only”.
People v Baker (26 NY2d 169) involved inculpatory statements of a confession as being binding on a codefendant. In the footnote at the commencement of this decision (n 1, p 170), referring to Bruton v United States (391 US 123) the court stated: "Of course, coram nobis is the proper remedy to raise an alleged Bruton error. As we stated in People v. Pohl (23 NY2d 290, 292): "It is, therefore, our conclusion that in this case and, for the future, in all cases in which the normal appellate process has been exhausted or is no longer available * * * a defendant complaining of the prejudicial impact upon him of a codefendant’s out-of-court statements at a joint trial must seek relief by resort to a writ of error coram nobis. ” On the question of retroactivity the court stated (p 172): "It is on the basis of this last quoted portion of Detective Deckles’ testimony that appellant asks for a new trial under the authority of Bruton v. United States (supra). Of course, Bruton having been held retroactive in Roberts v. Russell (392 U.S. 293) it is of no import that appellant’s trial took place prior to the Supreme Court’s decision in Bruton. ”
Matter of Roy M. v People (33 AD2d 232, 234, mot to dismiss app den 27 NY2d 588) is perhaps the most significant of this group of cases in that it pronounces criteria and guidelines addressed to applicability: "From recent cases, it appears the Supreme Court employs a three-pronged analysis in deciding whether particular decisions should apply retroactively. The factors to be considered are '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards’ (Desist v. United States, 394 U.S. 244, 249; Stovall v. Denno, 388 U.S. 293, 297). Although the test provides a convenient framework, it does not afford easy application.” In Stovall v Denno (388 US 293, 297) from which the foregoing quotation was taken, and immediately thereafter, the following quote appears: " '[T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in *960 which these factors combine must inevitably vary with the dictate involved.’ ” (Johnson v New Jersey, 384 US 719, 728.)
Matter of Roy M. v People (supra) was decided January 19, 1970. In a similar situation the Appellate Division, First Department, had occasion to address itself to the principle of retroactivity and stated the following: "The final criterion is the effect upon the administration of justice of retroactive application of the new standard. It is not difficult to conceive of retroactive application of the Ingle standard resulting in the release of persons who were stopped by police officers acting within their authority as that authority had been explained to them by both the Legislature and the court up to April 1, 1975. In light of the fact that the new standard has no relation to the 'truth-determining process’ and in no way involves the question of whether a defendant is in fact guilty of a criminal offense, retroactive application should be eschewed (see Desist v United States, 394 US 244 [1969], cf. People v Huntley, 15 NY2d 72 [1965] applying rationale of Jackson v Denno, 378 US 368 [1964]).” (People v Simone, 48 AD2d 497, 501 [Jan. 10, 1975].)
Adverting once again to People v Santiago (51 AD2d 1, 6-7, supra) which appears to be the sole supporting structure for the instant application, reference is made to the language of the learned majority:
"Nevertheless, the issue remains open for the present defendants and those similarly situated, as well as for youths who may be indicted in the future for class A-I or class A-II felonies. Moreover, in view of the conflict which exists in the decisions, it is highly important that an authoritative ruling be made on the issue. We invite, therefore, an application for leave to appeal to the Court of Appeals from the determinations reached here so that such a ruling can be made.”
Further (p 8): "In Santiago’s case, the record shows that the plea was made after the trial court made clear to him that the mandatory sentence was one year to life imprisonment * * * Thus, both entered into a bargain with full knowledge of the consequences and with the receipt of benefits under the bargain not otherwise available to them (cf. People v Foster, 19 NY2d 150). The acceptance of the benefits precludés the maintenance of the claims now made.” No such "contractual” issue exists in the instant case and as such, there emerges a distinguishing feature.
*961 Additionally, a strong dissent was filed by Honorable Samuel Rabin, a former Judge of the Court of Appeals, urging that (p 14): "The anomalous situation created by the statute is arbitrary and capricious and unsupported by any rational basis.”
The gravamen of this discussion focuses upon the point that the learned Appellate Division of the Second Department by a 3-2 divided court split on the overriding question with a most candid statement by the learned majority that "the issue remains open for the present defendants and those similarly situated,” inviting therefore, "an application for leave to appeal to the Court of Appeals from the determinations reached here so that such a ruling can be made.” (51 AD2d 1, 6, 7, supra.)
This observation is made, not to raise issue with the prevailing rule enunciated in Santiago which this court by the application of stare decisis is bound to apply in subsequent cases related to the constitutionality of CPL 720.20 (subd 3), but to point up the total atmosphere surrounding a disputed rule in a sensitive area of our law. This, the court submits can be considered but another element in the discretion to be applied under CPL 440.40 (subds 1, 3).
In view of the totality of the circumstances surrounding the instant motion, juxtaposed with the concern expressed by the learned Appellate Division, can it be said that the interests of justice would better be served by the setting aside of the court’s prior sentence and immediate incarceration of the defendant at this time? I think not.
"A judicial decision must be principled in the sense that it can be justified only by an appeal to a general rule or principle the applicability of which transcends the case at hand.” (Rolf Sartorius, The Justification of the Judicial Decision, 78 Ethics 171, 171-75; Aldisert, The Judicial Process, 326.)
Simply stated, the provisions of CPL 440.40 are applicable solely to a motion to set aside a sentence, and not to the previously made adjudication of youthful offender. Even were this not so, this court, for all of the reasons above stated, believes that the circumstances of the case itself, the unsettled condition of the law in the various departments of the State, the sound exercise of judicial discretion, and the basic and elemental demands of justice, require that this motion shall be, and is most respectfully, denied.