Arthur DRAYTON, Petitioner,

v.

The PEOPLE OF the STATE OF NEW YORK et al., Respondents.

No. 76C1713.

United States District Court,
E. D. New York.

Dec. 1, 1976.

Singer & Block, Brooklyn, N. Y., for petitioner by Nathan Schwartz, Brooklyn, N. Y.

Eugene Gold, Dist. Atty., Kings County, Brooklyn, N. Y., for respondents by Franklin L. Carroll, III, Brooklyn, N. Y.

1. Although not now confined, Drayton is still "in custody" since he was released on bail pending determination of this petition for a writ of habeas corpus. See *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).

## MEMORANDUM AND ORDER

NEAHER, District Judge.

█ Petitioner, in his application for a writ of habeas corpus,[1] challenges the constitutionality of section 720.20(1) of the New York Criminal Procedure Law, which mandates youthful offender treatment for eligible youths convicted of a misdemeanor in a local criminal court but leaves such treatment to the court's discretion when eligible youths are convicted of the same class of offense in a superior court. Youths in the former category automatically have their convictions vacated and replaced by a youthful offender finding, all records relating to their case remain confidential, and they are subject to a sentence of no more than six months in prison. Youths in the latter category, on the other hand, may be denied all of the benefits of youthful offender treatment, may receive sentences of up to a year and remain stigmatized with a criminal record.

CPL 720.20(1) makes the following distinction between youths convicted in "local criminal courts" (e. g., New York City Criminal Court) and those convicted in "superior courts" (e. g., New York Supreme Court):

"1. Upon conviction of an eligible youth, the court must order a pre-sentence investigation of the defendant. After receipt of a written report of the investigation and at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender. Such determination shall be in accordance with the following criteria:

"(a) If in the opinion of the court the interest of justice would be served by relieving the eligible youth from the onus of a criminal record and by not imposing an indeterminate term of imprisonment of more than four years, the court may, in its discretion, find the eligible youth is a youthful offender; and

"(b) Where the conviction is had in a local criminal court and the eligible youth had not prior to commencement of trial or entry of a plea of guilty been convicted of a crime or found a youthful offender, the court must find he is a youthful offender."

## I. FACTS

The effect of this distinction is well illustrated in this case. In 1972 a grand jury indicted petitioner, then 16 years old, on two counts of attempted robbery in the second degree and one count of assault in the second degree. All counts charged were Class D felonies. Petitioner entered a plea of not guilty. Several months later, in Supreme Court, petitioner was permitted to withdraw his not guilty plea and to plead guilty to the crime of assault in the third degree, a Class A misdemeanor, in full satisfaction of the indictment.[2] At that time the court also found petitioner to be an "eligible youth," i. e., he was eligible for youthful offender treatment because he was between the ages of 16–19 when he committed the crime, he had not been convicted previously of a felony, and the indictment did not charge him with a Class A felony. CPL § 720.10(1), (2).

At the subsequent sentencing, the court, on the basis of an unfavorable probation report, denied youthful offender treatment and sentenced petitioner to one year in prison. Had petitioner been in a New York City Criminal Court, he automatically would have been accorded youthful offender treatment, his sentence could not have exceeded six months and all official records relating to his case would be confidential.

Thereafter petitioner moved to set aside his sentence on the ground that CPL § 720.20(1), the statute here under attack, violated the Equal Protection Clause of the Fourteenth Amendment. The sentencing judge denied petitioner's motion, and the Appellate Division, Second Department, permitted him to appeal both the denial of his motion and the conviction. The Appellate Division ruled against petitioner, 47 A.D.2d 952, 367 N.Y.S.2d 506 (2d Dept. 1975), and the Court of Appeals affirmed. 39 N.Y.2d 580, 385 N.Y.S.2d 1, 350 N.E.2d 377 (1976). On September 21, 1976, petitioner applied to this court for a writ of habeas corpus.[3]

## II. DISCUSSION

The issue raised by the petition is whether the Equal Protection Clause requires that no discrimination may be made in granting youthful offender treatment to eligible misdemeanants solely because conviction occurred in one court of the State rather than another. For the reasons which follow, the court holds that the Equal Protection Clause does impose such a requirement and thus the petition must be granted.

At the outset the court notes that there being no "suspect classifications" or "fundamental rights" involved in this case, it cannot subject the challenged statute to strict scrutiny. See *Loving v. Virginia*, 388

---

2. The record does not contain any indication of plea bargaining. In fact, it reveals that the Assistant District Attorney, in recommending acceptance of the guilty plea, had concluded, after interviewing the complaining witnesses, "that the attempted robbery in the second degree was not a proper disposition based upon the statement of the witnesses themselves. This is an assault in the third degree at the most" (Plea Minutes at 4). While the charges in the indictment were not officially reduced, had the original charge been assault in the third degree (a misdemeanor), Drayton might well have been prosecuted in a local criminal court (CPL § 10.30) and thus would have automatically received youthful offender treatment.

Although the Assistant District Attorney's statement illustrates the vagaries inherent in the prosecutor's discretionary power over the degree of the offense charged, see W. Mlyniec, Juvenile Delinquent or Adult Convict—The Prosecutor's Choice, 14 Am.Crim.L.Rev. 29 (1976), the court does not base its decision on this aspect of the case.

3. Since petitioner presented his equal protection claim to the highest State court in New York, he has exhausted his State remedies and properly can raise the same challenge to his conviction and sentence in this habeas corpus proceeding. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Instead, the "rational basis" test must be applied. *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). As the Supreme Court expressed this test in *Walters v. City of St. Louis,* 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660 (1954):

> "Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary."

█ The court recognizes that youthful offender treatment is not a constitutional right. Nevertheless, since the State legislature decided to require youthful offender treatment for convicted misdemeanants in local criminal courts, the State cannot fail to accord Drayton such automatic treatment unless there is a rational basis for such discrimination. See *Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966).

With respect to this case, N.Y. CPL § 720.20(1) has established two classes of eligible youths: those convicted of a misdemeanor in Supreme Court and those convicted of a misdemeanor in Criminal Court. Only *after* the conviction in either court does the statute come into play and sentencing take place. At this stage the only differences between Drayton's situation and that of a convicted misdemeanant in Criminal Court is that he was originally *charged* with felonies rather than misdemeanors and that he was prosecuted in Supreme Court rather than Criminal Court.

Following from these differences, three rational bases are suggested by respondents for the classification established in N.Y. CPL § 720.20(1): the greater seriousness of the offenses charged in Supreme Court; judicial economy, in that certain provisions concerning youthful offenders in Criminal Court promote efficiency; and the fact that Supreme Court defendants have the right to trial by jury whereas Criminal Court defendants do not.

A. *Seriousness of Offense Charged in Indictment*

The principal rational basis set forth on behalf of this classification is the greater seriousness of the offenses charged in the indictment of those prosecuted in Supreme Court as opposed to those prosecuted in Criminal Court. In affirming the Appellate Division's decision against Drayton, the Court of Appeals declared:

> "The distinction between youths charged in superior as opposed to local criminal courts is not arbitrary; it is based on the nature of the crimes over which such courts have trial jurisdiction." *People v. Drayton, supra,* 39 N.Y.2d at 585, 385 N.Y.S.2d at 3, 350 N.E.2d at 379.

Concededly the nature of the offense is a reasonable ground for determining the appropriate court in which the defendant should be tried. "Superior" courts commonly encompass more serious matters within their jurisdiction than "lower" courts.[4]

Nevertheless, a classification which may be reasonable for one purpose may have no relevance in another context. The Supreme Court has emphasized that equal protection requires "that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620

---

4. The degree of the offense charged in an indictment also may affect other matters, such as: the right to trial by jury, *Duncan v. Louisiana,* 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491, 522, *reh. denied,* 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412 (1968); the right to receive a firearm shipped in interstate commerce, *United States v. Craven,* 478 F.2d 1329 (6 Cir. 1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85, *reh. denied,* 414 U.S. 1086, 94 S.Ct. 606, 38 L.Ed.2d 491 (1973); the number of peremptory challenges, N.Y. CPL § 270.25(2); and the length of time allowed the prosecution to move the case to trial, N.Y. CPL § 30.30(3)(a).

(1966). While it is reasonable for one charged with a felony to be tried in a different court from one charged with a misdemeanor, those charges should have no impact whatsoever on the respective punishments meted out to convicted misdemeanants in the two courts. The range of potential punishment should depend not on the seriousness of the offense charged in the *ex parte* grand jury accusation but rather on the offense of which a defendant stands convicted.

Recently New York courts have considered an equal protection challenge to CPL § 720.10(2)(a), which precluded the availability of youthful offender treatment to otherwise eligible youths who had been indicted for Class A felonies. In *People v. Brian R.*, 78 Misc.2d 616, 619–20, 356 N.Y. S.2d 1006, 1010 (Sup.Ct., N.Y.County, 1974), *aff'd mem.*, 47 A.D.2d 599, 365 N.Y.S.2d 998 (1st Dept. 1975), the court declared:

> "There is, and can be no rational basis for treating differently youths who have been convicted of the same offense merely because one of them had originally been charged with a higher grade of offense. The restriction or classification based upon the charge made in the indictment rather than the charge proven in court is utterly capricious and irrational."

That statement is equally applicable to Drayton's situation.

*United States v. Bland*, 153 U.S.App.D.C. 254, 472 F.2d 1329, *cert. denied*, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1972), cited by the Court of Appeals in support of its ruling, is distinguishable from the present case. In *Bland* the District of Columbia Circuit Court of Appeals upheld the legislative exclusion of individuals charged with certain crimes from the jurisdiction of the juvenile courts. Such individuals were to be prosecuted in the regular adult court system. In *Bland,* however, the initial charge affected the proceedings *in toto,*

whereas in the present case the New York statute only involves postconviction disposition. The *Bland* court was primarily concerned with whether the Family Division or the adult court properly had jurisdiction over the case. Drayton accepts the jurisdiction of the Supreme Court. He contests, rather, the *penalty* which the Supreme Court judge can impose on him.[5]

### B. *Judicial Economy*

Several "judicial economy" arguments are advanced on behalf of the statute in question.

Respondents point out that in 1971 the State legislature attempted to promote judicial efficiency by streamlining the procedures concerning youthful offender adjudications. See Denzer, Practice Commentary, N.Y. CPL art. 720, at 315–17. One of the major changes was to transfer the determination to grant or refuse youthful offender treatment from a point before entry of a plea to a point after conviction. N.Y. CPL § 720.20(1). Whereas prior to the shift an investigation for the purpose of determining whether or not to grant youthful offender treatment was made of all eligible defendants, now an investigation need be made only of those who were convicted. Respondents claim that this more efficient allocation of probation department resources represents a rational basis for N.Y. CPL § 720.20(1), the statute under which Drayton was sentenced.

The court recognizes that the shift of the determination to grant or refuse youthful offender treatment from the pre-pleading to the post-conviction stage undoubtedly promotes administrative efficiency. It is irrelevant, however, with respect to Drayton's claim. Drayton is not challenging the point in time at which the determination of whether or not to grant youthful offender treatment is made, for this shift involved

---

**5.** There is no question here involving the extent of prosecutorial discretion, which traditionally has been broadly upheld. See, *e. g., United States v. Verra*, 203 F.Supp. 87, 91 (S.D.N.Y. 1962); *United States v. Bland, supra.* A court's discretionary power with respect to sentencing is also not at issue. Rather, the issue in this case concerns provisions enacted by the State legislature with respect to the different ranges of punishment allowable in the Supreme Court and the Criminal Court for the same class of offender.

both the Supreme Court and the Criminal Court and it must be assumed that the former court as well as the latter benefitted thereby. But that benefit is not lost by the challenge made here. Drayton is attacking the more fundamental difference that in the Supreme Court youthful offender treatment is discretionary whereas in the Criminal Court it is mandatory for the same class of offense. This is an entirely different aspect of N.Y. CPL § 720.20(1) from the one concerning the timing of youthful offender determination. Therefore, the administrative gains derived from the shift in timing cannot form a rational basis for the classification at issue here.

Respondents also contend that N.Y. CPL § 720.20(1) promotes judicial efficiency by being an integral part of a scheme to eliminate jury trials in minor cases. By mandating youthful offender treatment in Criminal Court, N.Y. CPL § 720.20(1), and by limiting the sentences for those found to be youthful offenders to six months, N.Y. CPL § 720.25,[6] the legislature was able to eliminate jury trials for eligible youths in Criminal Court, N.Y. CPL § 340.40(7), without violating the rule that a defendant is entitled to a jury trial in any case where a sentence of more than six months is authorized. See *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970).

The elimination of jury trials for eligible youths in Criminal Court may be a rational basis for mandating youthful offender treatment in Criminal Court, but it does not explain why such treatment is not mandatory in Supreme Court.

Understandably, and in keeping with the decisions of the Supreme Court in *Baldwin v. New York* and *Duncan v. Louisiana, supra,* the legislature eliminated jury trials for eligible youths in Criminal Court while it retained them in Supreme Court because of the greater seriousness of the offenses charged in that court. Although this reason clearly is a proper basis on which to determine the right to a jury trial, as already demonstrated in Section A, *supra,* it

is not a rational basis on which to decide that youthful offender treatment should be mandatory in Criminal Court but discretionary in Supreme Court.

It must be emphasized that the question here is, why should youthful offender treatment be discretionary in Supreme Court when it is mandatory in Criminal Court? The first two "judicial economy" arguments fail to address this question.

Finally, the New York Court of Appeals, in declaring N.Y. CPL § 720.20(1) constitutional, stated that it was

"proper for the Legislature to have decided that, in the interests of judicial economy, it was not necessary to require a time-consuming investigation for the purpose of determining youthful offender eligibility in misdemeanor cases where the criminal act charged is not as serious as in the case of felonies." *People v. Drayton, supra,* 39 N.Y.2d at 585–86, 385 N.Y. S.2d at 4, 350 N.E.2d at 380.

It would appear from this statement that the legislature had eliminated "a time-consuming investigation for the purpose of determining youthful offender eligibility" in Criminal Court but had retained it in Supreme Court. A careful examination of the record and the relevant statutory provisions, however, indicates that no such action has been taken by the legislature. A finding of eligibility for youthful offender treatment still must be made in both Criminal Court and Supreme Court. A pre-sentence investigation of all convicted defendants still must be made in both courts. There is no indication that the pre-sentence investigations of those convicted in Supreme Court are any more "time-consuming" than those concerning convicted defendants in Criminal Court simply as a result of the Supreme Court's having the additional burden of determining whether to grant or deny youthful offender treatment. Thus there is no indication of judicial economy arising from any differences in the investigations conducted in Criminal

---

**6.** In 1974 the legislature repealed N.Y. CPL § 720.25 but retained this six-month limitation by placing it in the new N.Y. Penal Law § 60.-02.

Court as opposed to those in Supreme Court.

### C. Right to Trial by Jury

Respondents also argue that Drayton can be subject to a longer sentence in the Supreme Court because in that forum he has the right to a jury trial, whereas in the Criminal Court he would have faced a trial without a jury. Respondents analogize this situation to that involving the Youth Corrections Act, 18 U.S.C. § 5010(b), which in some circumstances permits a youth to be incarcerated for a longer period than an adult who had committed the same crime. The confinement of the youth in special rehabilitative facilities constitutes a *quid pro quo,* which justifies the potentially longer restriction on the youth's liberty. *Carter v. United States,* 113 U.S.App.D.C. 123, 306 F.2d 283 (1962).

The analogy fails, however, because of the crucial barrier that makes pre-conviction and post-conviction proceedings separate and distinct. Since rehabilitative facilities directly affect people during their imprisonment, it is reasonable that people granted such benefits might be forced to remain in confinement longer. The right to a jury trial, on the other hand, has no discernible effect on the length of one's sentence, and it would be unreasonable to create any relationship between them.

### D. The Guilty Plea

■ Drayton's guilty plea has created some confusion. The Court of Appeals decided that, in return for being permitted to plead down to a misdemeanor, Drayton had agreed he would not receive automatic youthful offender treatment and that he might receive a sentence of up to a year in prison. The Court of Appeals found this to be highly supportive of its ruling against Drayton.

The United States Supreme Court, however, in its most recent case on the effect of guilty pleas, has clearly stated that one who pleads guilty does not "waive" his right to challenge all constitutional violations. *Menna v. New York,* 423 U.S. 61, 96 S.Ct.

241, 46 L.Ed.2d 195 (1975). See also *United States ex rel. Daneff v. Henderson,* 501 F.2d 1180 (2 Cir. 1974). As the Supreme Court explained in *Menna*:

> "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." *Menna v. New York, supra,* 423 U.S. at 62, 96 S.Ct. at 242 n. 2.

Drayton's claim is that the State may not deny him youthful offender treatment and sentence him to over six months in prison no matter how validly his factual guilt was established. Therefore, his guilty plea does not bar the claim.

■ In conclusion, it is important to recognize that the youthful offender statute is designed "to spare young adults who have violated the criminal laws from the stigma and adverse consequences that necessarily flow from a criminal conviction." *People ex rel. Colvin v. New York State Bd. of Parole,* 75 Misc.2d 432, 435, 347 N.Y.S.2d 831, 834, *aff'd,* 45 A.D.2d 50, 356 N.Y.S.2d 363 (3rd Dept. 1973). The classification examined above has permitted this stigma to remain with Drayton in violation of the Equal Protection Clause. He is in effect branded for life with an adult conviction, while other eligible youths convicted of the same class of offense in Criminal Court are spared such an adverse consequence.

■ To sum up, the three rational bases offered by respondent for the classification established by the State legislature in N.Y. CPL § 720.20(1)—the seriousness of the offenses originally charged in Supreme Court, judicial economy, and the right to trial by jury—do not provide a rational basis for the discriminatory denial of youthful offender treatment to an equally eligible youth such

as petitioner. To the extent that the statute permits such a result, it is violative of the Equal Protection Clause and unconstitutional.

Accordingly, Drayton's application for a writ of habeas corpus is granted, his immediate release from State custody is directed, his conviction as an adult offender shall be vacated and replaced by a youthful offender finding, and the indictment and all other records pertaining to his conviction shall be sealed or otherwise retained in confidential status in accordance with youthful offender procedures.

SO ORDERED.