OPINION OF THE COURT
Wachtler, J.
The defendant pleaded guilty to two counts of rape in the third degree (Penal Law, § 130.25) in full satisfaction of a seven-count indictment. Prior to his plea he reserved his right, on this appeal, to challenge the constitutionality of the so-called statutory rape laws claiming them to be gender based and violative of equal protection in that they unlawfully discriminate against males.
There is no dispute as to the underlying facts and the language of the statute being challenged is clear. Section 130.30 of the Penal Law provides that “[a] male is guilty of rape in the second degree when, being eighteen years old or more, he engages in sexual intercourse with a female less than fourteen years old.” Subdivision 2 of section 130.25 of the Penal Law provides that “[a] male is guilty of rape in the third degree when * * * 2. Being twenty-one years old or more, he engages in sexual intercourse with a female less than seventeen years old.”
The defendant argues that because only males can be convicted of these crimes, the statutes are violative of the equal protection clauses of the State and Federal Constitutions. It is contended that this distinction based on gender is not supported by sufficient justification to withstand equal pro *460 tection analysis and that, therefore, the statutes are unconstitutional.
Recognizing the fact that it is statutory rape for an 18- or 21-year-old male to have sexual intercourse with a consenting female under the ages of 14 or 17, respectively, while it would be no more than the lesser crime of sexual abuse for an adult female to have normal sexual intercourse with a male less than 16 years of age, we conclude that a gender classification does exist. Only a male can be convicted as a principal actor under statutory rape laws. Indeed, it was because of this gender-based classification that the United States Court of Appeals for the First Circuit struck down as unconstitutional the statutory rape statute then in effect in New Hampshire (Meloon v Helgemoe, 564 F2d 602, cert den 436 US 950). In that case, the New Hampshire Federal District Court noted (436 F Supp 528, 532) that “there is no valid reason for singling out the male for criminal treatment where the act is consensual.” But the mere existence of gender classification does not, standing alone, render a statute unconstitutional.
In evaluating whether a statute violates the equal protection clause a court normally applies a “rational basis” test to determine whether the varied treatment of separate classifications of citizens “rests on grounds wholly irrelevant to the achievement of the State’s objective” (McGowan v Maryland, 366 US 420, 425). Where a statute’s application differentiates on the basis of race, alienage or nationality, however, the classification is deemed suspect and a strict scrutiny test must be applied to determine whether the challenged law is “necessary to promote a compelling governmental interest” (Shapiro v Thompson, 394 US 618, 634).
Between those two tests, a third has developed to evaluate a constitutional challenge to a gender-based statute which “must serve important governmental objectives and must be substantially related to achievement of those objectives” (Craig v Boren, 429 US 190, 197; see Califano v Webster, 430 US 313, 316-317). It is this test which becomes the focal point of our inquiry.
The State has advanced three distinct legislative justifi *461 cations for penalizing males for the commission of acts which would not be criminal if committed by a similarly situated woman: preventing psychological injury to emotionally immature girls, preventing physical damage and, finally, preventing the deleterious consequences of pregnancy in minors. The first of these claimed justifications, protecting young females from psychological harm, must be rejected as a suitable ground for the gender-based classification embodied in subdivision 2 of section 130.25 of the Penal Law, since it is rooted in the unfounded assumption that underage women are more vulnerable to emotional harm than are their male counterparts. Such an “ ‘archaic and overbroad’ generalization” (Craig v Boren, 429 US 190, 198, supra, quoting Schlesinger v Ballard, 419 US 498, 508), which is evidently grounded in long-standing stereotypical notions of the differences between the sexes, simply cannot serve as a legitimate rationale for a penal provision that is addressed only to adult males.
On the other hand, the problem of early pregnancy provides an ample justification for the Legislature’s decision to deter sexual contact between older males and teenage girls by imposing criminal sanctions. The unique vulnerability of young women in this area requires no empirical support, and a statute tailored to discourage sexual contact between fertile, underaged females and older men certainly can be viewed as one substantially related to the “important governmental objective” of preventing the deleterious economic social and psychological consequences of premature parenthood. Of course, it may be argued that subdivision 2 of section 130.25 of the Penal Law is underinclusive in that it does not penalize sexual contact between young females and teen-age boys, although such contact is just as likely to lead to unwanted pregnancy as is the prohibited conduct. This obvious underinclusiveness, however, is not objectionable in the present case, since it may be justified as a societal decision not to impose penal sanction upon those who are not yet capable of exercising mature judgment.
There remains to be discussed the required degree of proof that the justifications for these laws were actually on the mind of the Legislature when the statutes in question *462 were enacted or consciously retained in the law. The First Circuit case of Meloon v Helgemoe (supra) came perilously close to requiring that New Hampshire support its statute by production of actual legislative history indicating the purposes for its enactment (564 F2d 602, 607, supra). This approach is ill-advised, and perhaps dangerous, for two reasons.
First, a policy of sole reliance on a search for legislative history when determining whether to void a statute, is at best a hazardous business. To be sure, legislative history is extremely valuable to sound decision-making when the issue is merely statutory construction. But, it is another matter entirely to place undue reliance on legislative history in determining whether to strike down legislation which, on its face, indicates that it was enacted for a valid purpose. There is little question that what motivates one legislator to propose or make a speech urging the passage of a statute is not necessarily what motivates scores of others to enact it (United States v O’Brien, 391 US 367, 383-384). Furthermore, it would be anomalous to strike down statutes on a rationale which implicitly admits that the very same legislation could be immediately re-enacted on the basis of an explanation more perceptive than that which was originally offered.
Secondly, it is certainly illogical to require the production of legislative history documenting the underlying purpose for enactment or retention of a statute where, perhaps due to the statute’s immutably sound basis, no such legislative history exists. To impose such an unreasonable burden on the respondents in this case would risk invalidation of prudent legislation whenever a litigant-challenger suggests a conceivable legislative objective which might possibly run afoul of some constitutional provision (see McCray v United States, 195 US 27, 56). Therefore, where, as here, the legislation is supported by unrefuted, plausible and constitutionally sufficient justifications, a healthy recognition of the limits of judicial power compels the conclusion that the challenge to that legislation must be rejected (see McCray, supra, at pp 54-56).
Accordingly, the order of the Appellate Division should be affirmed.