In the Matter of the Claim of FRANK BURNS et al., Respondents, and RICHARD B. BRABAW, Appellant, v ROBERT MILLER CONSTRUCTION, INC., et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, February 26, 1981

### APPEARANCES OF COUNSEL

*Oot & Fallon (John S. Hogg* of counsel), for appellant.
*Lee H. Turner (Richard V. Pregent* of counsel), for Frank Burns and another, respondents.
*Robert Abrams, Attorney-General (Morris N. Lissauer, Henriette Frieder* and *Shirley Adelson Siegel* of counsel), for Workers' Compensation Board, respondent.

### OPINION OF THE COURT

CASEY, J.

The sole question presented on this appeal is whether the denial of workers' compensation death benefits to an illegitimate child, who was born after the decedent's death and who was not acknowledged by the decedent, violates the equal protection clause of the United States Constitution. We hold that it does not.

The purpose of the Workers' Compensation Law is "to

secure to workers and their dependents compensation when they are injured or killed in the course of their employment" *(Matter of Brezickyj v Eastern R. R. Bldrs.,* 59 AD2d 578, 579). To this end, section 16 of the Workers' Compensation Law provides for the payment of death benefits to specific dependents of a worker killed in the course of his employment. Pursuant to this section, certain close relatives, such as the worker's spouse and minor children, are automatically entitled to death benefits, while others must prove their dependence on the deceased worker in order to be entitled to death benefits (see, e.g., *Matter of Hernandez v Frangella Bros.,* 64 AD2d 734). Subdivision 11 of section 2 of the Workers' Compensation Law defines child as including "a posthumous child * * * and a step-child or acknowledged illegitimate child dependent upon the deceased." The appealing claimant herein, concededly illegitimate, is posthumous, and the board has found that the deceased worker did not acknowledge the child.[1]

Claimant contends that by requiring acknowledgement this statutory scheme invidiously discriminates against illegitimate children in general and him in particular, in violation of the equal protection clause of the Fourteenth Amendment. The board argues that there is no discrimination against illegitimate children since they are entitled to the same benefits as other children once they meet the statutory requirements. However, "[t]he fact that the statute is not an absolute bar does not mean that it does not discriminate against the class" *(Nyquist v Mauclet,* 432 US 1, 9). The challenged statutory scheme clearly creates a classification, distinguishing illegitimate children from legitimate children, and treats the two classes differently for the purpose of determining eligibility for death benefits.

Turning now to claimant's challenge to this classification on equal protection grounds, we must first determine the standard of review to be applied. When the statutory classification is deemed suspect, i.e., based on race, alienage or nationality, the "strict scrutiny" test requires that the statute promote a compelling State interest, in contrast with the "rational basis" test, which seeks to determine

---

1. Claimant concedes that there is substantial evidence to support this determination.

whether the classification is wholly irrelevant to the State objective; but where the classification rests on certain grounds, such as gender, a middle test has evolved, requiring that the statute serve important governmental objectives and be substantially related to those objectives *(People v Whidden,* 51 NY2d 457, 460). In our view, it is this middle test that must be applied here to determine whether the statutory classification of legitimate children and illegitimate children, for the purpose of imposing eligibility requirements for death benefits, passes constitutional muster (see *Trimble v Gordon,* 430 US 762, 767; *Mathews v Lucas,* 427 US 495, 505-506; *Matter of Lalli,* 43 NY2d 65, 67, affd *sub nom. Lalli v Lalli,* 439 US 259).

The only State objective for the classification advanced by the board, and indeed the only legitimate objective we can perceive, relates to the facilitation of potentially difficult problems of proof and the prevention of spurious claims. Citing *Lalli v Lalli* (439 US 259, *supra),* the board contends that the statutory requirement of acknowledgement for illegitimate children is substantially related to this important governmental objective. In *Lalli (supra),* the court held that EPTL 4-1.2, which requires a judicial order of filiation during the lifetime of the deceased as a precondition to an illegitimate child inheriting from his father, bears a substantial relationship to resolving the often difficult problem of proving the paternity of illegitimate children and the related danger of spurious claims against intestate estates. In so doing, however, the court was careful to note that "the States have an interest of considerable magnitude" in providing "for the just and orderly disposition of property at death" (439 US 259, 268), an interest absent in the case of determining eligibility for death benefits *(Weber v Aetna Cas. & Sur. Co.,* 406 US 164, 170).

In *Weber (supra),* a case relied upon by claimant, the court struck down a Louisiana death benefits statute that required a father to acknowledge his illegitimate child pursuant to the provisions of the Louisiana Civil Code. Significantly, under that law, the father in *Weber* could not have acknowledged his illegitimate child even if he had wanted to do so. Thus, while recognizing Louisiana's

interest in facilitating "potentially difficult problems of proof" (406 US 164, 174), the court explained: "The burdens of illegitimacy, already weighty, become doubly so when neither parent nor child can legally lighten them" *(Weber v Aetna Cas. & Sur. Co., supra,* at p 171). To be contrasted is the statutory scheme at issue here, which created no legal impediment to the decedent's acknowledgement of his illegitimate child,[2] and we must determine whether this distinction leads us to a different result than that reached in *Weber.* We conclude that it does.

The Supreme Court has recently considered a number of constitutional challenges to statutes creating classifications based on legitimacy, including *Lalli* and *Weber* discussed above. In most of these cases, the only governmental interest recognized by the court as even remotely valid was that relating to problems of proof and spurious claims, and some statutes were struck down while others were upheld. A comparison of these cases reveals that despite the existence of what might otherwise be a substantial governmental interest in facilitating problems of proof and preventing spurious claims, if the classification extends beyond what is necessary to promote that interest, thereby excluding a substantial segment of those who were intended to benefit by the statutory scheme, it will be invalidated, but if the classification is precisely structured to further that interest, it will be sustained (compare *Trimble v Gordon,* 430 US 762, *supra,* and *Jimenez v Weinberger,* 417 US 628, with *Lalli v Lalli,* 439 US 259, *supra,* and *Mathews v Lucas,* 427 US 495, *supra*). As the court stated in *Gomez v Perez* (409 US 535, 538): "We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination."

In our view, the statutory scheme at issue here, which

---

2. Claimant contends that since he was born after the decedent's death, it was *practically* impossible for the decedent to acknowledge him. The record belies this argument, however, since claimant's mother testified that decedent, prior to his death, was aware of and acknowledged the unborn child. The board apparently refused to believe this testimony, which it was free to do *(Matter of Di Maria v Ross,* 52 NY2d 771).

accords different treatment to legitimate and illegitimate children, is substantially related to the important State interest which the statute is intended to promote. As noted above, facilitation of problems of proof and prevention of spurious claims constitute such an interest, and acknowledgement of illegitimate children has been recognized as an effective method of reducing spurious and tardy claims (see *Davis v Richardson*, 342 F Supp 588, 592, affd 409 US 1069). Since the statute requires only an informal acknowledgement (see *Matter of McFadden v Duo Plumbing & Heating Corp.*, 73 AD2d 739), rather than creating a rigid formula, no substantial segment of those intended to benefit from the Workers' Compensation Law have been conclusively excluded, as was the case in *Weber (supra)*. The fact that the statute may operate to exclude some illegitimate children who might otherwise be entitled to receive benefits does not render the classification violative of the equal protection clause *(Lalli v Lalli*, 439 US 259, 272, 274, *supra)*.

Finally, we reiterate that the ultimate purpose of the statutory scheme at issue is to provide compensation to dependents of workers killed in the course of their employment, and the challenged classification serves this purpose by facilitating problems of proof of paternity and, therefore, dependency. Since we have found the acknowledgement requirement for illegitimate children constitutional and since the claimant here was not acknowledged, we need not reach the issue of whether the further requirement of subdivision 11 of section 2 of the Workers' Compensation Law that acknowledged illegitimate children, unlike legitimate children, prove actual dependence[3] is constitutionally permissible.

The decision should be affirmed, without costs.

MAHONEY, P. J., SWEENEY, KANE and MIKOLL, JJ., concur.

Decision affirmed, without costs.

---

3. Acknowledged illegitimate children of tender years are presumed to be dependent upon the father *(Matter of Hunter v Goodstein Bros.*, 2 AD2d 387).