OPINION OF THE COURT
David H. Edwards, Jr., J.
The petition is granted solely to the extent that the police commissioner’s determination refusing to certify for reinstatement and to reinstate petitioners, nunc pro tunc, to December 31, 1980, is annulled on the ground that it is arbitrary and capricious and without basis in reason or law *778 (CPLR 7803, subd 3), and the matter is remitted to the commissioner for the purpose of reinstating petitioners, nunc pro tunc, to December 31, 1980.
The following is a capsulized recitation of facts which preceded the notice of petition herein.
The petitioners, Francisco De Castro and Andrew Pignatelli, had been duly appointed by the Police Commissioner of the City of New York to the competitive civil service position of police officer and had served in that position until June 30,1975. On that date, the police commissioner suspended the employment of several hundred police officers, including the petitioners herein, as the result of New York City’s fiscal crisis. Upon suspension, petitioners’ names were placed on a preferred eligibles list for the position of police officer so that, in the event the financial restraints were lifted, they would be considered for reinstatement.
During 1977, petitioners were notified that the city’s Department of Personnel had declared the police department’s preferred list appropriate for usage in connection with the city’s need to fill positions as correction officers and that petitioners’ names had been certified for such use to the Department of Correction. Later that year, both petitioners were appointed correction officers and their names were removed from the preferred list for reinstatement to their former positions as New York City police officers.
On or about February 22, 1977, a group of correction officers (D’Onofrio petitioners) similarly situated to the petitioners herein, commenced an article 78 proceeding in Supreme Court, challenging the removal of their names from the police department’s preferred eligibles list and, in thereafter refusing to restore their names to said list.
Subsequently, as a result of this litigation, the parties thereto executed a stipulation of settlement and discontinuance on January 25, 1980 which was filed with the court along with a judgment incorporating the terms thereof.
De Castro and Pignatelli, who were not parties to the D’Onofrio litigation, were notified by letter from the chief of the General Litigation Division, office of the Corporation *779 Counsel, the attorney for respondents, that they too could have their names restored to the preferred list and be considered for reinstatement, subject to certain conditions set forth in the accompanying waiver and stipulation of settlement. Both De Castro and Pignatelli signed and returned the waiver agreement.
Thereafter, the instant petitioners were directed by the police department to report for a physical examination. At the time petitioners reported for examination, they were aware that respondents had previously assured the D’Onofrio petitioners that the physical examinations were not a prerequisite to reinstatement.
Following their physical exams, De Castro and Pignatelli were each notified that they had been diagnosed as hypertensive and, as such, it was the recommendation of the police surgeon that they be medically disqualified for reinstatement to the position of police officer.
Each petitioner ultimately sought re-evaluation of the police surgeon’s recommendation and nullification of his medical findings based upon independent blood pressure tests which had yielded normal readings.
In response to their requests for re-evaluation, petitioners were notified that the medical findings disqualifying De Castro and Pignatelli for reinstatement would not be rescinded and no further medical review would be conducted.
Consequently, on April 10, 1981, petitioners filed the instant petition challenging respondents’ refusal to reinstate them as police officers by December 31,1980, the deadline set by the terms of the waiver.
Petitioners contend the respondents’ refusal to reinstate them violates the equal protection mandates of State and Federal law, as well as the express terms of the waiver agreement.
The equal protection provisions of both the Federal and State Constitutions apply to the actions taken by administrative bodies of local governmental units. (See Cooper v Aaron, 358 US 1, 16; Matter of Bauch v City of New York, 21 NY2d 599, cert den 393 US 834.) An agency of the State denies equal protection when it treats persons similarly *780 situated differently under the law. (Royster Guano Co. v Virginia, 253 US 412, 415.) Of course, not every difference in treatment violates equal protection since equal protection of the law does not require that all persons be dealt with identically. But, a valid reason must exist for differentiating among members of the same class. As formulated in a Supreme Court decision, the traditional test for a denial of equal protection under State law is “whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective.” (Turner v Fouche, 396 US 346, 362; accord Hotel Assn. of N. Y. City v Weaver, 3 NY2d 206, 212-213.) The application of this test requires, initially, that the basis for the classification and the governmental objective purportedly advanced by such classification be determined. The classification must then be compared to the objective to determine whether the classification rests on some ground having a fair and substantial relation to the object for which it is proposed. (Reed v Reed, 404 US 71, 76; Royster Guano Co. v Virginia, supra, p 415; Matter of Buttonow, 23 NY2d 385, 392.) The arbitrary character of respondents’ refusal to reinstate these petitioners becomes apparent when evaluated according to this test.
Addressing the dissimiliar classification made by respondents and the governmental objective purportedly advanced, one of the issues framed for this court is whether under the equal protection guarantees of State and Federal law the respondents acted arbitrarily and capriciously by refusing to certify petitioners for reinstatement and not reinstating them to the position of police officer. This court concludes that respondents did.
Analyzing the facts herein, the basis of the classification was the participation or nonparticipation in the stipulation of settlement. The governmental objective purportedly advanced, as articulated by respondents, is the State’s policy favoring the settlement of lawsuits. The court finds this justification for respondents’ conduct overly simplistic in approach, because it evades that branch of the test which requires the classification to rest on grounds relevant to the particular controversy at hand.
*781 Specifically, the crux of respondents’ argument is that they could choose to restore the D’Onofrio litigants to their former positions merely on the basis that they had exercised their option to sue and ultimately executed a stipulation, while conditioning reinstatement for the present petitioners on satisfactory completion of medical evaluations.
In rejecting this very argument, the Court of Appeals found that classifying police lieutenants’ entitlement to retroactive salary increases on participation in a stipulation settling a lawsuit that challenged their promotion examination violated equal protection. The court concluded the stipulation bore no significant relation to the governmental objective to be achieved. (.Matter of Abrams u Bronstein, 33 NY2d 488.)
To say a stipulation of settlement incidental to a lawsuit advances public policy favoring settlement of legal actions is to state the obvious, for the stipulation effects the settlement. But, this does not necessarily mean the stipulation can be chosen as the basis for discriminating between litigants and nonlitigants, unless it is demonstrated that this classification promotes a governmental objective peculiar to the controversy at hand.
In addition, because a classification based on participation in a stipulation of settlement will always advance public policy favoring settlement, any irrational or arbitrary decision could be justified by this argument as to any nonlitigant. To carry respondents’ logic to its conclusion, given the facts in this case, meant determining who would be a police officer on the basis of who was more diligent in commencing a lawsuit. Certainly, such a procedure for selecting police officers does not demonstrate an exercise of reasoned judgment.
Thus, classifying reinstatement on the basis of participation in the stipulation was arbitrary because it did not rest on a governmental objective reasonably related to the issues herein; and, was therefore, a violation of equal protection. For this reason alone, the respondents’ determination must be annulled.
Turning now to the contentions made in connection with the waiver agreement, respondents argue that while the conditions of the waiver agreement were almost the same *782 as those contained in the D’Onofrio stipulation, they were not identical. It is respondents’ position that paragraph “1” of the stipulation provided for immediate restoration of its litigants to the preferred eligidles list for police officer, while the waiver agreement did not so provide. Respondents assert that the waiver agreement provided for restoration to the preferred list only after the police department had determined that petitioners had satisfied the qualification prerequisites for reinstatement.
The waiver is clear and unambiguous in its terms and the court will not fashion a different agreement for the parties, or construe it to meet arbitrary theories subsequently developed by respondents.
Nowhere in the waiver are petitioners informed that their names would not be immediately restored. Indeed, paragraph “1” of the waiver would indicate otherwise. It stated: “The undersigned will be reinstated to the New York City Police Department no later than December 31, 1980 in the same order as he/she appears on the preferred list”.
Paragraph “10” of the stipulation required D’Onofrio petitioners to “meet any and all qualification prerequisites for reinstatement * * * and the Police Department shall determine if the petitioner meets said qualifications in the same manner that said determination was made for all others who were previously considered for reinstatement.” The signers of the waiver agreed to be bound by paragraph “10” of the stipulation which was incorporated by reference.
One aspect of the qualification prerequisites referred to in paragraph “10”, related to the impending medical examinations. As to these exams, the D’Onofrio litigants were told the examinations were not a prerequisite to reinstatement, but rather were being conducted merely to update the department’s medical records. In the absence of a contrary purpose having been indicated to De Castro and Pignatelli, it is only logical to assume the same purpose existed for administering medical exams to these petitioners. To suggest that a different purpose existed in the case of the instant petitioners, is to highlight how the medical findings were used to arbitrarily disqualify the instant *783 petitioners. Once respondents decided not to make the medical findings an impediment to reinstatement for the D’Onofrio petitioners, it could not apply such a bar to the petitioners herein. Surely, the letter from respondents’ attorney, dated March 5,1980, which stated the purpose of the medical exams, was written with the consent of the respondents and accurately stated the respondents’ position.
Finally, with respect to the issue of timeliness, the court finds that the petition was not time barred. A final and binding determination within the meaning of CPLR 217 is one which unfavorably impacts upon petitioner and is rendered by a body or officer competent to make it. (Christ v Lake Erie Distrs., 51 Misc 2d 811, mod 28 AD2d 817.)
Herein, petitioners’ right to seek judicial review did not ripen until December 31, 1980, when the respondents failed or refused to restore petitioners to their former position as police officers, in accordance with the deadline set by the waiver agreement. Respondents’ argument that the statute began to run from the date petitioners were informed of the police surgeon’s findings is obfuscatory, since under department regulations, the authority to appoint is vested in the commissioner. The scope of the police surgeon’s authority does not extend beyond the duty to recommend based upon his medical findings. Consequently, when the petition was served on April 10,1981, it was within the controlling four-month Statute of Limitations.
While the respondents are vested with broad power in exercising their authority to certify and reinstate eligibles to the police department, this does not mean that such power is unfettered, absolute or unreviewable, so that they may refuse to reinstate an otherwise qualified eligible on an obviously arbitrary ground. It was inequitable and unlawful to base the disparate treatment of similarly situated individuals upon participation in the stipulation and to discriminately place the impediment of medical findings in the path of only a few of those individuals. As a result, the determination made, the refusal to reinstate, violated *784 the express terms of the waiver agreement and the guarantees of equal protection.