OPINION OF THE COURT
Donald E. Belfi, J.
The defendant has moved for an order granting him a *556 separate trial from his codefendants William Salvatto and Damon Hewlette. (The charges against a third codefendant have been dismissed.)
The defendant, age 18 at the time of the alleged criminal incident and an eligible youthful offender (CPL 720.10 [2]), has been indicted for the crime of assault in the third degree (Penal Law § 120.00), a class A misdemeanor. He contends that, under these circumstances, he is, or should be, entitled to mandatory youthful offender treatment pursuant to CPL 720.20 (1) (b). He asserts that he should thus be granted a single Judge, nonpublic trial apart from his "adult” codefendants. (CPL 340.40 [7]; 720.15 [2].) The defendant further argues that he is named only in count No. 2 of the indictment, charged with causing "physical injury” to the complainant. (Penal Law § 10.00 [9].) Count No. 1 of the indictment charges Damon Hewlette with causing serious physical injury to the complainant in the course of a postparty melee. (Penal Law §§ 120.05 [assault, second degree], 10.00 [10].) The defendant contends that the presentation to a jury of the bizarre circumstances bearing on count No. 1 will irrevocably prejudice, by "transference of guilt”, its assessment of his "minimal involvement, if any” in the fracas and, "in effect, deny him a fair trial”. "Charge premises upon disparate levels of and varying allegations of culpability, foreshadow confusion of evidence and prejudice to the Defendant”. Therefore, pursuant to the discretionary provisions of CPL 200.40 (1), the defendant requests he be granted a separate trial.
The Special District Attorney responds by asserting first that the defendant is not a person entitled to mandatory youth offender status because he is before a superior court under indictment, albeit charged only with a misdemeanor. (CPL 720.20 [1] [b].) He further asserts that the People have three interlocking confessions and that contrary to the defendant’s contention, "the facts surrounding defendants’ assault upon Mr. Leahy [the complainant] and their conduct in aiding and abetting each other in the commission of such assault, including their respective roles in fending off those seeking to assist Mr. Leahy, require that this matter be tried in one trial, before one jury * * * A 'joint trial’ would not, as alleged by Mr. Z * * * result in prejudice to him. Indeed, a severance would rather, make the presentation of this action to a jury disjointed and make confusion more likely.”
The defendant’s first ground for seeking a trial severance raises a very troublesome issue. It essentially calls into ques *557 tion the constitutionality of the New York youthful offender statutes as applied to an eligible youth, under indictment in a superior court and charged only with the alleged commission of a misdemeanor.
CPL 720.20 provides:
"1. Upon conviction of an eligible youth, the court must order a presentence investigation of the defendant. After receipt of a written report of the investigation and at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender. Such determination shall be in accordance with the following criteria:
"(a) If in the opinion of the court the interest of justice would be served by relieving the eligible youth from the onus of a criminal record and by not imposing an indeterminate term of imprisonment of more than four years, the court may, in its discretion, find the eligible youth is a youthful offender; and
"(b) Where the conviction is had in a local criminal court and the eligible youth had not prior to commencement of trial or entry of a plea of guilty been convicted of a crime or found a youthful offender, the court must find he is a youthful offender.” (Emphasis supplied.)
The statute makes youthful offender treatment mandatory where a youth (CPL 720.10 [1]), who has never before been convicted of a crime (Penal Law § 10.00 [6]) or been the subject of a youthful offender adjudication (CPL 720.10 [3]), is convicted of an offense in a local criminal court (CPL 10.10 [3]). (Compare, CPL 720.10 [2], [3], with 720.20 [1] [b].) For all other eligible youths, a youthful offender finding is discretionary. (CPL 720.20 [1] [a].) The defendant here apparently meets all of the criteria set forth in CPL 720.20 (1) (b) for mandatory youthful offender treatment, save one. Though charged only with a misdemeanor, his case is presently pending in a superior court rather than before a local criminal court, only because the prosecution is proceeding by way of indictment rather than by information. (CPL 1.20 [3], [4], [24].) The defendant sees this as a denial of his constitutionally guaranteed right to equal protection of the law. (US Const 14th Amend; NY Const, art I, § 11.)
An equal protection challenge to New York’s youthful offender statutes is not new. Most notable for present purposes, the statutes were able to withstand a constitutional attack from an otherwise eligible youth, charged by indictment with *558 a felony, who subsequently entered a bargained for plea of guilty to a misdemeanor and then claimed entitlement to mandatory youthful offender treatment. (People v Drayton, 47 AD2d 952, affd 39 NY2d 580; Drayton v People, 423 F Supp 786, revd 556 F2d 644, cert denied 434 US 958.) That case explicitly did not treat the issue raised here. (See, People v Drayton, 39 NY2d 580, 586, supra; Drayton v People, 423 F Supp 786, 788, n 2, revd 556 F2d 644, 647, n 1, supra.) However, the discussions contained in the several published decisions clearly establish the constitutional framework within which the present case must be analyzed.
There is no constitutional right to youthful offender treatment. Such treatment is entirely "a gratuitous creature of the Legislature subject to such conditions as the Legislature may impose without violating constitutional guarantees. ” (People v Drayton, 39 NY2d 580, 584, supra; emphasis supplied; see also, McKinney’s Cons Laws of NY, Book 2, Constitution, Constitutional Interpretation § 41.) Therefore, the legislative classification contained in CPL 720.20 (1) is "cloaked with a presumption of validity which may be overcome only 'if no grounds can be conceived to justify [it]’ ”. (People v Drayton, supra, at 584, citing McDonald v Board of Election, 394 US 802, 809; see also, United States v Bland, 472 F2d 1329, 1333-1334, cert denied 412 US 909.) Furthermore, since the challenged classification does not involve either "suspect classifications” or "fundamental rights” (Loving v Virginia, 388 US 1; Reynolds v Sims, 377 US 533), the application of a "rational basis test”, not one of strict scrutiny, is appropriate. (People v Drayton, supra, at 584-585, and cases cited therein; see also, Drayton v People, 423 F Supp 786, 787-788, revd 556 F2d 644, 645, supra; People v Whidden, 51 NY2d 457, 460.[1]) Our Court of Appeals has stated that: "this test requires that a governmental classification be based on some conceivable and valid State interest (McGinnis v Royster, 410 US 263, 276-277 * * * '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it’ (McGowan v Maryland, 366 US 420, 426).” (People v Drayton, 39 NY2d 580, 585, supra; emphasis supplied.) The Federal District Court (Neaher, *559 J.) preferred the formulation of the test set forth in Walters v City of St. Louis (347 US 231, 237): " 'Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.’ ” (Drayton v People, 423 F Supp 786, 789, supra; emphasis supplied; see also, Baxstrom v Herold, 383 US 107.) The Second Circuit Court of Appeals preferred to call it "the rational relationship test”, citing McGinnis v Royster (supra) but did not choose to set forth its preferred formulation. (Drayton v People, 556 F2d 644, 645, supra.)[2]
Applying their version of the "rational basis” test, the Court of Appeals found the distinction drawn by CPL 720.20 (1) not to be arbitrary. The court held that the classification in the statute was based upon the gravity of the crime charged and that "there is a rational basis for distinguishing between a youth accused of a felony and one charged with a misdemeanor.” (People v Drayton, 39 NY2d 580, 585, supra; emphasis supplied.) The court continued: "There is no invidious discrimination involved in a legislative decision that those individuals who, on preliminary investigation, are believed to have committed felonies should not automatically be endowed with the benefit of youthful offender status and that in these cases youthful offender status should be conferred only in the court’s discretion upon due consideration of the youth’s background and prior history of involvement with the law.” (People v Drayton, supra, at 585.) The court further found it was rational for the Legislature to have decided, in the interest of judicial economy, that it would not be necessary to require "a time-consuming investigation for the purpose of determining youthful offender eligibility in misdemeanor cases where the criminal act charged is not as serious as in the case of felonies.” (People v Drayton, supra, at 585-586; emphasis supplied.) In affirming the holding of this State’s highest court, the Second Circuit Court of Appeals added some definition to the decision. Their decision centered strongly on the sentenc *560 ing function of Trial Judges.[3] "Thus, the issue on the merits is whether the New York legislature can permit the judge sentencing a misdemeanant to reject youthful offender status on the basis of unproved felony allegations, while requiring youthful offender status for misdemeanants never charged with a felony * * * If, following a valid misdemeanor conviction, it is constitutional to base a sentence in part on facts relating to an unproved felony charge, it cannot be irrational for a legislature to give sentencing judges the option of considering adverse information including such facts, whenever by the return of an indictment, it is established that there exist facts constituting at least probable cause to believe the defendant has committed a felony * * * it is surely rational for the legislature to have specified that in every instance where the facts relating to the unproved [felony] charge have been found by a grand jury to constititute probable cause, the sentencing judge should have the option of weighing all the adverse facts in selecting an appropriate penalty within the limits specified for the misdemeanor charge on which the defendant has been convicted.” (Drayton v People, 556 F2d 644, 646-647, supra; emphasis supplied.)
It is generally agreed that the purpose of the youthful offender statutes is "to spare young adults who have violated the criminal laws from the stigma and adverse consequences that necessarily flow from a criminal conviction.” (People ex rel. Colvin v Board of Parole, 75 Misc 2d 432, 435, affd 45 AD2d 50; see also, People v Drayton, 39 NY2d 580, 584, supra; Drayton v People, 423 F Supp 786, 792, supra.) It is clear that the courts which found constitutional the statutory classification of youths who must receive this benefit did so on the basis of the rationality of a distinction grounded on the gravity of the crime originally charged in an accusatory instrument which could serve as the basis for a prosecution of that charge.[4] It is equally clear that the "rational basis” so found does not exist in this case. This defendant has never been *561 charged with a felony by the Grand Jury. There is therefore no "preliminary investigation” basis, no "probable cause”, for a belief that this defendant’s activities were felonious. There has never been a "serious crime” charged here. Furthermore, denying to this defendant mandatory youthful offender treatment in no way serves the "interests of judicial economy”. "Judicial economy” is supposedly served by not requiring a "time-consuming investigation * * * in misdemeanor cases where the criminal act charged is not as serious as in the case of felonies.” (People v Drayton, 39 NY2d 580, 585-586, supra; see also, the "judicial economy” discussion in Drayton v People, 423 F Supp 786, 791-792, supra.) Here, only a misdemeanor has been charged. That fact notwithstanding, the "time-consuming investigation” would still have to be conducted here, simply because the case is pending in a superior court where, by statute, a youthful offender sentence is discretionary even when a felony has never been charged. (CPL 720.20 [1] [a], [b].)
The only distinction between this defendant and those accused misdemeanants for whom youthful offender treatment is mandatory is the forum in which the charge is pending. There is no basis, rational or otherwise, for treating this defendant differently from them. The statutory classifications were found to be constitutional not because of inherent differences between superior and local criminal courts, but because of the preliminary finding of potentially serious criminal conduct which brings a particular case to one forum rather than the other. Obviously, prosecutorial discretion can play a major role in which it will be. (See, Drayton v People, 556 F2d 644, 647, n 1, supra; People v Drayton, 39 NY2d 580, 586, supra, citing, inter alia, United States v Bland, 472 F2d 1329, cert denied 412 US 909, supra.) But, prosecutorial discretion, broad and virtually unencumbered though it may be (see, for example, United States v Verra, 203 F Supp 87), cannot of itself provide a rational basis for a statutory classification. Prosecutorial discretion can determine in which forum a charge is brought, or the gravity of a charge, or whether a prosecution proceeds at all. (See, United States v Bland, supra, at 1335-1337; Cox v United States, 473 F2d 334, 335-336.) Prosecutorial *562 discretion cannot however determine the appropriate powers of a given court, or its jurisdiction, or its sentencing options, if any. The Legislature does that, within parameters laid down by the Constitution. For the Legislature constitutionally to mandate a certain sentence for a certain act committed by a certain class of persons when the matter is before one court, and to provide for something different when the matter is before another court, there must be a rational basis for the distinction. The seriousness of the original charge and the interests of judicial economy are those rational bases; unfettered prosecutorial discretion is not. It has been held constitutionally proper for a Legislature to make "a highly placed, supervisory prosecutor responsible for deciding whether to proceed against a juvenile as an adult.” (Cox v United States, 473 F2d 334, 336, supra.) That is, the initial decision is made an executive rather than a legislative or judicial function. The actual decision is made through the nature of the charge lodged by the prosecutor against the juvenile, after an investigation into the gravity of the juvenile’s conduct. The trial court is left the option of imposing a "juvenile delinquent” sentence, even if the youth is treated as an adult. In view of the rational bases found here by both State and Federal courts, it would be implausible, and of dubious constitutionality, for this court to conclude that our Legislature intended to invest a prosecutor with the power to indiscriminately exclude an otherwise eligible individual from the mandatory youthful offender classification simply by means of the prosecutorial instrument he chooses to file, with no regard to the seriousness of the crime charged. That would be tantamount to approving of the circumvention of the rational basis for the statute’s constitutional viability under the guise of prosecutorial discretion. This court cannot accept that. The Legislature, as a legislative function, has determined that a certain described class of youths are to be mandatory youthful offenders. It could not also have intended to allow, as an executive function, indiscriminate disregard of that determination through the exercise of "prosecutorial discretion”. (See generally, McKinney’s Cons Laws of NY, Book 2, Constitution, Constitutional Interpretation § 1; McKinney’s Cons Laws of NY, Book 1, Statutes § 96.)
The application of the rational basis test requires initially that the basis for the statutory classification and the purported government objective be determined. The classification must then be compared to the objective to determine whether *563 the classification rests on some ground having a fair and substantial relationship to that purposed objective. (See, Royster Guano Co. v Virginia, 253 US 412, 415; Reed v Reed, 404 US 71, 76; Matter of Buttonow, 23 NY2d 385, 392; Matter of De Castro v Ortiz, 119 Misc 2d 777, 780.) Here, the over-all objective of the youthful offender statutes is to spare eligible youths the potentially lifelong stigma of a criminal history because of their youthful exuberance or juvenile misjudgment. The statutory classification for mandatory youthful offender treatment discriminates on the basis of the gravity of the charge originally filed against an otherwise eligible youth. (People v Drayton, 39 NY2d 580, 585, supra.) This discrimination has been held to have a constitutionally valid "rational basis”. (People v Drayton, supra; Drayton v People, 556 F2d 644, supra.) For that basis to remain so, all persons "similarly situated” must be treated in the same way. (See, Matter of Patricia A., 31 NY2d 83, 88; People v Ditniak, 28 NY2d 74, 78; Matter of De Castro v Ortiz, 119 Misc 2d 777, 779-780, supra; People v Smith, 97 Misc 2d 115, 118.) This defendant is in that classification of persons for whom it has been deemed rational that youthful offender treatment be mandatory. He must, therefore, be treated as such, even though his case is pending in a superior court. The classification is not based on the court before which the defendant is to appear. Rather, it is based on the gravity of the charge (felony or "other”) originally brought.
This court is well aware that a strong presumption of constitutionality attaches to a statute duly enacted by the Legislature (People v Pagnotta, 25 NY2d 333, 337), and that, to declare a law unconstitutional, the invalidity must be demonstrated beyond a reasonable doubt. (Matter of Van Berkel v Power, 16 NY2d 37, 40.) Guided by these principles, this court has always deemed it the better practice for nisi prius courts to hold a statute unconstitutional only in the most clear-cut and convincing case. (See generally, McKinney’s Cons Laws of NY, Book 2, Constitution, Constitutional Interpretation §§ 43, 46, 47.) Mindful of this, and based upon the foregoing, it appears to this court that, as applied to this defendant, CPL 720.20 (1) is unconstitutional. This defendant is clearly entitled to mandatory youthful offender status.
The unconstitutionality of the statute as applied to the defendant does not, however, affect the validity of the underlying accusatory instrument. (Cf, CPL 210.20 [1] [a], [n]; 210.25.) Rather, it affects the range of punishment imposable should *564 the defendant be convicted (Penal Law §60.02), the subsequent nature of the "conviction” and future accessibility of the records concerning it (CPL 720.35), and the nature and mode of trial. (CPL 720.15, 340.40 [7].) Since the defendant is under valid indictment, he cannot be tried in a local criminal court. (CPL 10.30 [1]; 1.20 [3]; 200.10, 210.05.) And, this court cannot sit as a local criminal court for purposes of trial. (CPL 10.30 [3].) The defendant must be tried in a superior court. He is, therefore, granted a trial severance (CPL 200.40 [1]), and a nonpublic trial (CPL 720.15 [2]). But, he cannot be deprived of his right to a jury trial. (See, CPL 260.10, 320.10; NY Const, art I, § 2; art VI, § 18; US Const, art III, § 2; 6th, 14th Amends; compare, CPL 340.40 [7]; Baldwin v New York, 399 US 66; People v Trotman, 98 Misc 2d 340; People v Denning, 98 Misc 2d 369; People v Carolyn S., 92 Misc 2d 674.) Ironically, the indictment herein, initially perceived as a disadvantage because of the sentencing options it ostensibly made available, has instead conferred upon the defendant the advantage of a jury/nonjury trial choice. (CPL 320.10.)
That portion of the defendant’s motion seeking a trial severance is granted.

. In People v Whidden (51 NY2d 457, 460), Judge Wachtler for the majority set forth as the rational basis test "whether the varied treatment of separate classifications of citizens 'rests on grounds wholly irrelevant to the achievement of the State’s objective’ (McGowan v Maryland, 366 US 420, 425)”.

. In his dissent in People v Whidden (51 NY2d 457, 463), Judge Meyer stated the test to be that the statutory classification must bear a rational relationship to a permissible governmental objective. (See generally, McKinney’s Cons Laws of NY, Book 2, Constitution, Constitutional Interpretation §§ 22-23.)

. It should be noted that the court considered Drayton’s guilty plea to have been of great significance. Their guilty plea/waiver analysis preceded their consideration of the constitutional merits of CPL 720.20.

. There is no indication that either the State or the Federal Court of Appeals deemed the allegations of a felony complaint (CPL 1.20 [8]) or the findings of a local criminal court Judge in holding a defendant for the action of a Grand Jury (CPL 180.70 [1]) to be the functional or substantive equivalent of a Grand Jury inquiry. It should also be noted that a superior court may acquire trial jurisdiction of a crime (i.e., a felony or misdemeanor) through the medium of a superior court information (CPL 1.20 [3- *561 a]). The "inquiry” associated with such an accusatory instrument is the District Attorney’s alone, circumscribed by the charging considerations discussed in People v Herne (110 Misc 2d 152). (See also, People v Sledge, 90 AD2d 588.)